THE SPERRY AND HUTCHINSON COMPANY, PLAINTIFF-
RESPONDENT, v. WALTER T. MARGETTS, Jr., TREAS-
URER OF THE STATE OF NEW JERSEY, AARON K.
NEELD, DEPUTY DIRECTOR OF THE DIVISION OF
TAXATION IN THE DEPARTMENT OF THE TREASURY,
ARMAND J. SALMON, Jr., STATE SUPERVISOR OF
MOTOR FUELS TAX BUREAU IN THE DIVISION OF
TAXATION IN THE DEPARTMENT OF THE TREASURY,
DEFENDANTS-APPELLANTS.

Argued February 8 and 15, 1954—Decided April 5, 1954.

*Mr. Joseph A. Murphy,* Assistant Deputy Attorney-General, and *Mr. Sanford Freedman* argued the cause for appellants (*Mr. Theodore D. Parsons,* Attorney-General, and *Mr. Samuel Kaufman,* on the brief).

*Mr. Samuel M. Lane,* of the New York Bar, by leave of court, argued the cause for respondent (*Mr. James J. Langan* and *Mr. William S. Beinecke,* the latter of the New York Bar, on the brief; *Messrs. Emory, Langan & Lamb,* attorneys).

The opinion of the court was delivered by

HEHER, J. We inquire here as to whether the use of plaintiff's long-established trading stamp discount system by retailers of motor fuel would constitute a violation of *L.* 1938, *c.* 163, as amended by *L.* 1939, *c.* 62, and *L.* 1952, *c.* 258, *N. J. S. A.* 56:6–2, directing: (a) the posting as therein provided of the price per gallon of motor fuel sold by such retailers from a pump or other dispensing equipment, including all taxes, state and federal, levied on the "manufacture or sale" of the fuel, which "shall remain posted and in effect for a period of not less than twenty-four hours"; (b) enjoining retail dealers against selling motor fuel "at a price which is below the net cost of such motor fuel to the retail dealer plus all selling expenses," and forbidding on pain of specific penalties the sale of such fuel "at any other price than the price, including tax, so posted," and the implementing provision (e) that no "rebates, allowances, concessions or benefits shall be given, directly or indirectly,

so as to permit any person to obtain motor fuels from a retail dealer below the posted price or at a net price lower than the posted price applicable at the time of the sale."

Judge Goldmann concluded that the use of such cash discount stamps according to plaintiff's system would not constitute a "rebate," "allowance," "concession," or "benefit" within the ban of subdivision (e) of the cited *section* 56:6–2, and, moreover, that on the contrary hypothesis this statutory provision must be deemed an arbitrary, discriminatory and unreasonable interference with a private business, and therefore unconstitutional. 25 *N. J. Super.* 568 (*Ch. Div.* 1953).

The case is here by our certification, on plaintiff's motion, of an appeal taken by defendants to the Appellate Division of the Superior Court.

■ Such use of plaintiff's discount stamps is not within the letter of the statutory interdiction; nor would it be inimical to the reason and spirit of the act. Of this there can be no doubt when the legislative policy and purpose are related to the chosen means of fulfillment.

■ We are not here concerned with the conventional price-fixing law. The retailer himself may determine the sale price of the fuel, though he is enjoined not to sell below cost plus selling expenses; he is required to post the price on the pump or other dispensing equipment, but he is free to change the price every 24 hours; the statute directs only that the posted price shall remain in force for not less than that period. *N. J. S. A.* 56:6–2(*a*), (*b*). Subdivision (e) is a measure designed to implement and prevent evasion of the prior injunction against sales of the particular commodity at a price other than the price posted. To this end, it forbids "rebates," "allowances," "concessions" or "benefits," either directly or indirectly, making for sales "below the posted price or at a net price lower than the posted price applicable at the time of the sale." But these are terms that in their natural sense and significance do not import the cash discount that long has been familiar practice in general merchandising as representative of the value of the immediate use of the price of the commodity as compared to the

deferred payment. The words take color from one another and from the context.

Plaintiff's "cooperative discount system" is in aid of what has come to be the normal cash discount and the only practical means to that end where there are intermittent purchases in small lots. *Sperry & Hutchinson Co. v. McBride*, 307 *Mass.* 408, 30 *N. E.* 2d 269, 131 *A. L. R.* 1254 (*Sup. Jud. Ct.* 1940). Not long after the inception of the device, it was judicially assessed as "merely one way of discounting bills in consideration for immediate payment in cash, which is a common practice of merchants, and is doubtless a popular method, and advantageous to all concerned, and it is not obnoxious to public policy." *Ex parte Hutchinson*, 137 *F.* 949 (*C. C. D. Wash.* 1904). Although the business is now country-wide, there has been no change in mode or method that has materially altered this concept.

As Judge Goldmann has said, the "S. & H." trading stamps have been in use throughout the country for more than 50 years, as a means of providing a cash discount comporting with standard in the form of merchandise when the issued stamps represent cash purchases of $120 in the aggregate, the equivalent of a discount of 1.66% when the stamps are redeemed directly by the merchant, and 2.08% when redeemed by the plaintiff corporation, seemingly alternative courses at the option of the holder of the stamps, although we do not suggest that option is of the essence in this regard. Thereby, the purchaser is given the benefit of the traditional cash discount; and the merchant-licensee has the reciprocal advantage of trade with the frugal shopper who is attracted by the saving. But the discount is measured by the economic worth to the merchant of the prompt use of the money and the corresponding reduction in working capital requirements and the avoidance of the expense of maintaining credit facilities and the inevitable losses from bad debts. The cash discount is a term of payment merely, not a price adjustment; it is a mode of financing, not a reduction in the price. The "cooperative" feature permits the accumulation and redemption of stamps issued by any and all of plaintiff's licensees

in New Jersey. *R. S.* 45:23-1 *et seq.* sanctions the use of trading stamps for such a purpose, subject to conditions which are not of concern here.

In a word, the cash discount thus provided measures the value of the use of the money to the merchant-licensee, and makes for economic equality between the merchant selling for cash and the merchant selling on credit. It does not in any real sense work an inequality of price within the intendment of subdivision (e). Rather, it has reference to the terms of sale, making for price parity in respect of all retail sales, either for cash or on credit. The true cash discount of approximately 2%, according to common practice, bears no relation to the object and policy of the law. It is not a trade discount nor a rebate or concession not concerned with the value of the sales related to the time and terms of payment.

The opinion evidence adduced is one on this proposition. Accounting practice distinguishes between "trade discount on sales" and "cash discount on sales." The former affords a means of adjusting prices "purposely established at high amounts" in published catalogs "in order that fluctuations in prices may be measured from the list or catalog prices," thereby "obviating the necessity of publishing new catalogs," and also "as a device to give certain customers preference over others"; a cash discount, on the other hand, "is a financial inducement to the customer to pay bills on or before a date specified in the sales invoice," usually 1% or 2% if the bill is paid in ten days, and "Consequently, it should be treated as a non-operating item, rather than as a deduction from the sales price." Rosenkampff and Wider in *Theory of Accounts, pp.* 478, 488 (1942). "A cash discount is a reward for prompt payment. It is a trade practice long established, and is authoritatively recognized as being not a reduction from the purchase price." *Montgomery, Auditing Theory and Practice, pp.* 499, 500.

The avowed purpose of this statutory regulation is the prevention, in the public interest, of fraudulent and unfair practices in the retailing of motor fuel. But there is no

suggestion in the enactment itself of a design to outlaw the true cash discount as a means to this end. Indeed, its omission from the category of forbidden acts and conduct contained in subdivision (e) makes reasonably clear an intention *contra*. Compare *R. S.* 56:4–7(*a*), where the Legislature expressly distinguished between "trade discounts" and "cash discounts." Certain it is that, quite apart from power, we cannot assume from the nature of the expressed policy that the Legislature had in view the interdiction of this well established and commonly known general trade practice of a discount for cash, available to all alike.

The intention of the lawgiver is taken or presumed according to what is consonant to reason and good discretion. The particular words are to be made responsive to the reason and spirit of the enactment. *Wright v. Vogt*, 7 *N. J.* 1 (1951). The purpose of construction is to bring the operation of the statute within the apparent intention of the Legislature. *Nagy v. Ford Motor Co.*, 6 *N. J.* 341 (1951). When the general intent is found, general words may be restrained accordingly, and those of narrower significance expanded to effectuate that intent. *Glick v. Trustees of Free Public Library*, 2 *N. J.* 579 (1949). The true meaning of any clause or provision ordinarily is that which best comports with the subject and general object of the act. *Maritime Petroleum Corporation v. City of Jersey City*, 1 *N. J.* 287 (1949).

In this view, we have no occasion to consider the constitutional questions raised and argued on the contrary hypothesis.

Affirmed.

OLIPHANT, J. (concurring). I am of the opinion that the issuance of trading stamps which have a redemption value brings about a direct reduction, or at least an indirect one, in the price of the article purchased and constitutes a "rebate," "concession" or "benefit" in clear contravention of the provisions of *N. J. S. A.* 56:6–2(*e*).

As to the constitutional question involved I am generally in accord with the opinion of Judge Goldmann below.

I accordingly concur in the result reached by the majority, which is to affirm the judgment entered in the Superior Court.

Mr. Justice BURLING desires me to state that he joins in this concurring opinion.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.