56 N.J. Super. 589 (1959)
153 A.2d 691
THE STATE OF NEW JERSEY, BY GROVER C. RICHMAN, JR., ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
THE SPERRY & HUTCHINSON COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1959.
Decided July 20, 1959.
*591 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Elmer J. Bennett argued the cause for plaintiff-appellant (Messrs. Carpenter, Bennett & Morrissey, attorneys; Mr. Milton A. Dauber, of counsel).
Mr. Donald B. Kipp argued the cause for defendant-respondent (Messrs. Pitney, Hardin & Ward, attorneys; Messrs. Kipp and Robert P. Hazlehurst, Jr., and Mr. Samuel M. Lane of the New York Bar, on the brief).
*592 The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal by the State of New Jersey from the dismissal by the Chancery Division of two complaints brought under the escheat laws. Both actions are against the same defendant and involve virtually the same questions of fact and of law. Consequently, they were consolidated for trial below and the appeals are also consolidated here.
Each suit seeks to obtain for the State the cash value of unredeemed trading stamps of the Sperry & Hutchinson Company (hereinafter "S & H"). The first appeal involves an action brought pursuant to N.J.S. 2A:37-11 et seq. and seeks to escheat absolutely to the State of New Jersey the cash value of all trading stamps issued prior to January 26, 1941, which consumers had not redeemed before the expiration of the 14-year period ending on January 26, 1955, the date of commencement of these actions.
The second appeal involves an action brought pursuant to N.J.S. 2A:37-29 et seq. for protective custody of the cash value of trading stamps issued on or before January 26, 1950, which holders had not redeemed before the expiration of the 5-year period ending on January 26, 1955.
Although the procedures for and immediate consequences of absolute escheat under N.J.S. 2A:37-11 et seq. and protective custody under N.J.S. 2A:37-29 et seq. differ to some extent, the word "escheat" will hereinafter be used generally to refer to the taking by the State under either statute.
The "cut-off" dates in the respective actions are, then, January 26, 1941 and January 26, 1950. Obviously the State does not know and cannot prove the identity of persons to whom stamps were issued prior to the cut-off dates. Much less can it prove which of such holders did not redeem their stamps. It contends, however, that a flat 5% of all the stamps issued prior to such dates is a conservative estimate of the number which in any year will not be redeemed. The value of the stamps represented by the 5% figure aggregates *593 $7,615,836.03 in the 5-year action and $5,472,665.91 in the 14-year action. The dollar value is computed by multiplying the number of unredeemed stamps (found by taking 5% of the total number of stamps issued prior to the cut-off dates) by $.00166, the estimated value per stamp. Anything recovered in the 14-year action would have to be credited against the amount recoverable in the 5-year action. Thus the amount the State claims to be escheatable, and hence owing from S & H, in this proceeding is $7,615,836.03.
Before either action came on for trial, S & H moved to dismiss the complaint in the 5-year action upon the ground that N.J.S. 2A:37-29 and 30 applied only to moneys payable as dividends, interest and wages. The Chancery Division agreed and dismissed the action. The Supreme Court reversed, holding the Custodial Escheat Act to be applicable to all money claims generally. State by Richman v. Sperry & Hutchinson Co., 23 N.J. 38 (1956).
Insofar as the escheatable property the State here seeks is the property right or chose in action which the owners of the unredeemed stamps have against the defendant, the determination of what the Supreme Court designated as "serious questions with respect to the provability and enforceability of the State's claim" (23 N.J. at page 41), turns to a significant extent upon the nature of the rights which are conferred upon members of the consuming public when they acquire the defendant's trading stamps.
S & H, a New Jersey corporation organized in 1900 as the successor to a partnership formed in 1896, is the oldest and largest trading stamp company in the country. See Comment, 6 Duke B.J. 71, 73 (1957). It provides retail merchants with a unique token or symbol, the S & H Cooperative Cash Discount Stamp, which enables the merchant to give a discount for cash payments and to promote their cash sales generally. The merchants issue the stamps to their customers at the rate of one stamp for each ten cents of purchase in cash. Customers accumulate these stamps, place them in books provided by the merchant or by *594 S & H, and, normally, when the books are filled, present them for exchange at one of the defendant's 450 redemption outlets. Sperry & Hutchinson Co. v. Margetts, 25 N.J. Super. 568, 572 (Ch. Div. 1953), affirmed 15 N.J. 203 (1954).
The merchant-licensee pays for the services provided by defendant at a rate measured by the number of stamps issued to him. The price he pays has always ranged from $2.50 to $3 per thousand stamps, depending upon volume.
Proceeds from the issuance of all stamps are added to and considered part of S & H's general funds, available for any purpose. Although its balance sheet reflects a liability for unredeemed stamps, this is merely a "bookkeeping estimate" of the dollar amount which will be required to redeem outstanding stamps. There are no actual assets or funds segregated for future redemptions, although a corporate officer once wrote in a 1948 article, offered as an exhibit, that there existed an earmarked redemption fund, constantly being replenished by receipts from sales of stamps.
S & H derives its profit largely from the difference between the price charged merchants for the stamps and the wholesale cost of redemption merchandise. In Sperry & Hutchinson Co. v. Kent Prosecuting Attorney (Searl), 287 Mich. 555, 283 N.W. 686 (Sup. Ct. 1939), a company official testified that stamps that are "lost or not used" constitute another element in defendant's profits. The latter point is impliedly conceded in this litigation, for the defendant has argued escheat should be denied because it has treated amounts attributable to unredeemed stamps as part of its profits and has paid income taxes on such amounts. There is no dispute that prior to 1928 S & H paid taxes on the basis that 2% of issued stamps would never be redeemed. In 1928, following a dispute with the Internal Revenue Bureau, the conflicting guesses as to the taxable lapse rate were compromised at 5%, and S & H has filed its income tax on this basis ever since. As is stated in defendant's brief,
*595 "* * * S & H has been obliged to pay income taxes for more than thirty-five years upon the basis that there is no liability for the claims which the State now purports to enforce."
There is no question but that the stamp collector has, under certain circumstances, contractual rights against S & H. He will rarely see the license agreement between S & H and the merchant, but defendant expects him to ascertain his rights from the endorsement printed on the stamps and from the notice printed in the stamp-collecting book. The stamps are issued in small oblongs of gummed paper, generally green in color. In general, it is impossible to tell in which state any particular stamp was issued. Throughout most of its history, S & H has printed a legend on the gummed side of each stamp. It contains the promise that "this stamp" will be redeemed in merchandise or cash, "subject to notice in stamp books."
The stamp books in evidence contain a "Notice" on the inside front cover. It reads in part:
"* * * The only right which you acquire in said stamps is to paste them in books like this and present them to us for redemption. * * * It is to your interest that you fill the book, * * *.
The stamps when received by you must be pasted in the book, as that is the method we have adopted for the purpose of preventing their further use. * * *"
To similar effect is a message printed on one of the pages where stamps are to be pasted:
"When this book is completely filled it is worth $2.00 in merchandise. * * *"
On the last page of the book, the collector is told:
"You have now earned your discount for paying cash for your purchases." (Emphasis added.)
The statutory authority for the escheat of personal property is N.J.S. 2A:37-13. It provides that whenever any *596 such property shall remain unclaimed for the period of 14 successive years, or whenever the whereabouts or identity of the owner shall remain unknown for that period, the State may claim the property. The term "personal property" is defined in N.J.S. 2A:37-11 as including:
"* * * moneys, negotiable instruments, choses in action, interest, debts or demands due to the escheated estate, stocks, bonds, deposits, machinery, farm crops, live stock, fixtures, and every other kind of tangible or intangible property and the accretions thereon, up until the time of the commencement of the action for escheat * * *."
S & H does not deny that the holders of its stamps have "personal property" within the meaning of the statute. Neither does it dispute that a right of redemption, should any be found to exist, constitutes escheatable personalty. It does contend, however, that the right of redemption does not arise until a prescribed minimum number of stamps have been accumulated by any one collector. Since the State cannot point to any one stamp holder as having accumulated the requisite number, and since the State's rights can be no greater than those held by each of its predecessors in interest (State by Persons v. Standard Oil Co., 5 N.J. 281, 298 (1950); State v. Otis Elevator Co., 12 N.J. 1, 14 (1953)), defendant argues the State has proved no rights to which it may succeed by virtue of this proceeding.
Also in contention is the applicability of the Custodial Escheat Act, N.J.S. 2A:39-29 et seq., which, as noted, authorizes protective custody only of "property consisting of cash, dividends, interest or wages owed by any corporation." Defendant's position is that its only obligation is to redeem the stamps in merchandise, not in cash. We note that from 1917 to 1946 almost every stamp in evidence expressly states on its reverse side that it is redeemable in cash or merchandise, subject to the notice in the stamp books. The books do not expressly negate the right to redeem for cash. It should be observed that in New Jersey and in five other *597 states, statutes require the printing of a cash redemption value on each stamp and redemption in cash at the holder's option, R.S. 45:23-3. Redemption in merchandise or cash is required in this state when the holder has stamps aggregating $.05 in value. Ibid. In two other states, Washington and Wisconsin, redemption in merchandise is prohibited altogether. There are, then, three different redemption plans in effect in different states: in cash; in merchandise; in cash or merchandise. As stated, however, the place of issuance of the stamps said to be escheatable cannot be ascertained.
In the trial of these actions, the State's case was based almost entirely on the admissions of the defendant itself. These admissions included depositions of its officers, books and records, various publications issued by defendant, including the stamps and stamp books, and statements, pleadings, briefs, and testimony submitted in litigation involving the defendant in eight states from 1910 to 1952.
At the conclusion of the entire case the Chancery Division dismissed both actions on several grounds, which were either implied or stated expressly in the court's opinion: (1) the stamps themselves must be presented for redemption before any right to redemption exists; (2) there was no proof as to any individual holder's having owned the prescribed minimum necessary to redeem; and (3) the 5% lapse rate was a mere compromise with the Internal Revenue Bureau and hence not possessed of "that degree of certainty which is required to prove damages in a civil action." State by Richman v. Sperry & Hutchinson Co., 49 N.J. Super. 165 (Ch. Div. 1958).
We pause briefly to register our disagreement with the trial finding that the 5% lapse rate is too uncertain to admit of its employment as a basis for determining the number of stamps subject to escheat. Mindful that a miscalculation of 1/10 of 1% will result in a taking of approximately $150,000 rightfully belonging to S & H, we are nevertheless satisfied that whatever uncertainty inheres in *598 the figure redounds to the defendant's benefit. In 1928 a resolution of the board of directors recited the Treasury Department's determination of the lapse rate as being 5% and then declared:
"* * * the officers of this Company and this Board of Directors have determined and agreed that a reserve of 95% is ample to meet the stamp obligations of the Company for all stamps issued since January 1st, 1914, * * *."
S & H at the same time adjusted its reserve from 1914 to reflect its concurrence with and acceptance of the finding that at least 5% of the stamps would never be redeemed, and the reserve has been maintained on this basis to the present time. Defendant does not now challenge the 5% rate as being excessive, but only as being uncertain. It cannot be assumed that S & H has been so indifferent to the rights of its stamp holders as to maintain an inadequate reserve. In the absence of evidence which would indicate it to be excessive, we find the 5% lapse rate to be a conservative estimate of the number of stamps that will not be redeemed, and therefore endowed with sufficient certainty to provide a valid measure of defendant's liability, if any.
We turn to consider defendant's contention that purchasers cannot legally redeem their stamps in whatever quantity they wish but must have accumulated a sufficient number to fill at least one book, and that such condition precedent on the right to redeem is binding on the State as well.
The State's analysis of the defendant's business is based upon the theory that there is no such limitation on the right to redeem. It argues that each trading stamp, when issued, is evidence of a fixed and vested property right, and this because the essence of the transaction is the giving of a stamp as a discount for cash payment, which, it is argued, is fully earned when the purchaser surrenders his privilege of buying on credit. In this view, each stamp, although of no intrinsic worth, is "something for something." The analogy is to other choses in action which, upon issuance, *599 represent an immediate, fixed obligation. From this description of the transaction the conclusion is said to be inescapable that S & H is under a liability to redeem each and every stamp issued, regardless of the number presented.
In its attempt to show that defendant is bound to redeem each stamp, plaintiff can rely on only two bits of evidence. During judicial proceedings in two 1910 Maryland cases, defendant asserted that each of its stamps would be redeemed, regardless of the quantity presented. Thus, in State v. Caspare, 115 Md. 7, 80 A. 606 (Ct. App. 1911), and in the complaint filed in Sperry & Hutchinson Co. v. Owens (U.S. Cir. Ct., Dist. of Md. 1910) (unreported), S & H either took the position or expressly stated:
"Complainant also carries in said store a stock of merchandise of more limited variety than that which is given for nine hundred and ninety of said stamps, or multiples thereof with which to redeem its said stamps when presented in any number from one upwards."
This statement was made in an effort to show that S & H had complied with a Maryland statute so requiring. There is no indication the statement was intended to be descriptive of defendant's operations in other states. The foregoing is equally applicable in explanation of the fact that S & H at various times issued stamps bearing the overprint, "one pen," meaning that it would be redeemed for one steel pen point. This was done to satisfy the requirement of an Indiana statute and does not affect the company's liability elsewhere.
In Michigan, in 1938, defendant was also involved in litigation. Edwin Beinecke, then defendant's president and presently chairman of its board of directors, testified that S & H would, upon request, redeem its stamps in less than full book amounts. Mr. Beinecke, however, made it clear that S & H did not feel itself bound to do so, but followed the practice as a matter of good public relations. The judge in that case asked the witness:
*600 "The Court: I assume that you place some limit on the least amount that will be redeemed, don't you?
The Witness: [Mr. Beinecke]: Well, no, we don't your Honor. It happens frequently 
The Court: You mean if a man brought in 100 stamps you will give him his ten cents?
The Witness: Yes. It is like the woman who goes to a dry goods store and buys a dress or something and wears it that night and brings it back. The dry goods merchant knows he is not obligated to take it back, but they do it rather than have the women go around blaming the store. The amount is so small that for advertising reasons, whenever they come in for anything they get it."
We observe that in Sperry & Hutchinson Co. v. Kent Prosecuting Attorney (Searl), supra, in which the foregoing testimony was heard, it was to defendant's advantage to show that it did redeem in small quantities. Mr. Beinecke's position that S & H was not contractually bound to do so could therefore only have operated to defendant's detriment. There is no reason to doubt that defendant did believe that it was not legally bound to redeem in less than full book amounts.
In comparison with such inconclusive proofs, the documentary and testimonial evidence in support of S & H's position is persuasive enough to leave no doubt that there exists no legal obligation on its part to redeem in less than the prescribed quantities, except in the few states where S & H is by law expressly bound so to do. As we have already indicated, the legends printed in the stamp books specifically state that the discount is earned when the last page is filled with stamps. Six of S & H's license agreements with retailers were also introduced in evidence by plaintiff; four of these describe defendant's obligation, vis-a-vis the stamp collector, as requiring the redemption of "filled" stamp books. The two other agreements provide for redemption subject to the conditions stated in the catalogues and stamp books.
Defendant's catalogues, if not part of the contracts with the stamp collector or the retailers, at least indicate defendant's *601 understanding of its liability and its representations to the public. The earliest included in the appendix is that of 1924-25. It is written in terms conveying the impression that at least one completed book, not stamps, is necessary to obtain a premium:
"When the book is completed you may obtain any premium priced at one book."
In its 1927-28 catalogue, under the capitalized, bold-faced word, "Important," S & H printed the following:
"Before submitting books to exchange for premiums be sure that they are completely filled with S & H Green Discount Stamps."
Further down on the page appears:
"All articles in this catalogue are obtainable in exchange for completely filled books of S & H Green Discount Stamps * * *." (Emphasis in both instances is that appearing in the catalogue.)
The catalogues of 1929-30, 1931-32, 1932-33, and 1933-34 are the same as that of 1927-28. In the catalogues of 1930-31 and 1934-35, S & H announced flatly that books would not be redeemed if they were not completely filled. Those dating from 1938-39 through 1951 do not contain these statements, but the pages containing instructions for redemption are headed,
"How to Redeem Your Filled Books."
From 1952 to 1955 the catalogues, in their only pertinent statements, say,
"Books when completely filled with S. & H. Green Stamps only, may be redeemed * * *."
Three of defendant's employees, each of whom have served for over 25 years, testified that they had never redeemed less than a full book of stamps. One of these, presently a vice-president, confirmed that S & H carries nothing in its redemption outlets which is exchangeable for less than a *602 full book. Of the thousands of items of merchandise listed in the 34 S & H catalogues in evidence, not one item has been available for less than a full book.
From the foregoing it is clear that S & H, where permitted by law to do so, would enforce a one-book minimum requirement as a matter of course, with the requirement being relaxed in scattered instances as an accommodation to individual stamp holders. This conclusion also comports with a realistic view of the essential nature of defendant's business, which is to induce customers to keep returning to those retailers issuing its stamps so as directly to enhance the retailer's profits and indirectly to enhance, by increased sales of stamps, defendant's profits. Neither of these ends would be advanced were the customer left without an incentive to keep purchasing, free to redeem any number of stamps.
The State argues that even if there exists any such minimum-number condition on the stamp holder's right to redeem, the requirement is not operative as against the State in an escheat proceeding. Plaintiff's theory here is that the issuing of stamps is a closed transaction whereby the merchant gives a discount for the payment of cash. Since the discount is assertedly fully earned upon payment of the purchase price, the holder's right is said to be matured and inchoate, the minimum-number requirement thus amounting to no more than "a mechanical condition upon enforcement." If the argument is valid and the holder has an inchoate property interest in the stamps not dependent on any further accumulation, we would agree the State would not be subject to the full-book limitation. See Cities Service Co. v. McGrath, 342 U.S. 330, 72 S.Ct. 334, 96 L.Ed. 359 (1952); Connecticut Mutual Life Ins. Co. v. Moore, 333 U.S. 541, 68 S.Ct. 682, 92 L.Ed. 863, rehearing denied 334 U.S. 810, 68 S.Ct. 1014, 92 L.Ed. 1741 (1948); State by Parsons v. Standard Oil Co., supra; State by Parsons v. Fidelity Union Trust Co., 25 N.J. 387 (1957); Malone v. Provident Institution for Savings, 201 Mass. 23, 86 N.E. 912 (Sup. Jud. Ct. 1909).
*603 This argument is based on the assumption that the essential aspect of the defendant's business is the giving of a discount for cash and that the trading stamp is a mere price-cutting device. We have already seen that the function of the stamp as a symbol is not merely to induce a single purchase of the retailer's offering but to provide an incentive for continued patronage, and that it is more nearly, in effect, an advertising device. Bristol-Myers Co. v. Lit Brothers, Inc., 336 Pa. 81, 6 A.2d 843 (Sup. Ct. 1939); Gever v. American Stores Co., 387 Pa. 206, 127 A.2d 694 (Sup. Ct. 1956). Even accepting, however, the State's theory at face value, it still does not follow that each stamp is independently redeemable. We are convinced that the terms on which the discount is granted require the acquisition of a certain number of the discount stamps before the discount is earned and that until such time, S & H's liability remains contingent. The stamp book says just that. Thus: "You have now earned your discount for paying cash for your purchases." And our Supreme Court has indicated as much. In Sperry & Hutchinson Co. v. Margetts, 15 N.J. 203 (1954), the court said: "Thereby, the purchaser is given the benefit of the traditional cash discount," referring to the providing of a discount "when the issued stamps represent cash purchases of $120 in the aggregate." (15 N.J. at page 207.) Therefore, the accumulation of 1,200 stamps is not merely a mechanical condition of the enforcement of a right; it is a prerequisite to the existence of any right against defendant. Cf. 52 Am. Jur., Trading Stamps, § 16, p. 793.
Plaintiff cites State by Parsons v. Fidelity Union Trust Co., 25 N.J. 387 (1957), as authority for the proposition that inchoate property rights are escheatable. The case involved escheat of certain "scrip" certificates issued by the Clinton Trust Company in a 1934 reorganization to holders of fractional shares of its preferred stock. There the inchoate rights the State sought to escheat had become enforceable rights by virtue of Fidelity's agreement in 1947 to pay the *604 holders of fractional shares. 25 N.J. at page 391. Here there is no proof that rights inchoate in the hands of the stamp collectors have become enforceable. Fidelity did not hold that the State, merely by seeking escheat, can convert inchoate rights into choate, enforceable rights. Nor shall we so hold. The State's rights are no greater than that of each stamp holder.
Next the State argues that it has complied with the minimum-number requirement. Plaintiff makes the point that it is asserting rights to billions of unredeemed stamps which, in the aggregate, would fill countless stamp books. The analogy is to the family situation wherein the housewife may redeem in her own book all the stamps collected by individual members of her family. Again, however, the State is barred by the fact that the stamps are not freely transferable without defendant's consent. The collector is so apprised both by the legend on the reverse side of the stamps and by the "Notice" in the stamp books. The State may not aggregate rights which do not exist to establish a right unto itself; it has succeeded only to individual, non-aggregated claims.
The State enters two final objections to the recognition of the minimum-number requirement in this proceeding. It is first urged that such condition was never intended to affect the right of the sovereign to escheat abandoned property and it would therefore be unreasonable to expect or require compliance therewith. This point focuses attention on the plaintiff's rights; it overlooks that the State's claim is entirely derivative. To accept it as a basis for decision we would be required to overrule a series of cases decided by our highest court, many of which have been cited supra.
Plaintiff's contention that defendant is estopped from insisting upon the full-book requirement because it has consistently represented to the public that it would redeem in lesser amounts, scarcely deserves mention. It suffices to say that defendant has made it perfectly clear to all the collectors of its stamps that the stamps would be redeemed only after *605 at least one book had been filled. It is going too far to say that certain remarks by defendant's officers in trade magazines of limited circulation, to the effect that each issued and unredeemed stamp constitutes a continuing liability against S & H, in any way misled the public as to the nature of defendant's contractual obligation.
The preceding analysis as to the consequences of the necessity of redemption in full books is not changed by the existence of our statute requiring a trading stamp issuer to redeem in merchandise or cash at the holder's option after stamps aggregating $.05 have been presented for redemption. R.S. 45:23-3. Whether the right to redeem arises upon the accumulation of five cents' worth or of a full book of stamps, there is still no proof that any one collector acquired the requisite number.
We have carefully considered defendant's other defenses to this action. In view of the foregoing disposition, it is unnecessary for us to set forth our conclusions with respect to them. Our reluctance unnecessarily to extend this opinion is not to be construed as an implied determination of invalidity of the other points raised.
The judgments in favor of defendant in both actions are affirmed.