SIDNEY GLASER, DIRECTOR OF DIVISION OF TAXATION, STATE OF NEW JERSEY, PLAINTIFF, v. PATRICK DOWNES, JR., d/b/a ROUTE 3 ESSO, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided August 22, 1972.

*Mr. Harry Haushalter*, Deputy Attorney General, for plaintiff (*Mr. George F. Kugler, Jr.*, Attorney General of New Jersey, attorney).

*Mr. Howard Stern* for the defendant (*Messrs. Shavick, Stern, Schotz, Sleiger and Croland*, attorneys).

KOLE, J. C. C. (temporarily assigned). The Director of the Division of Taxation of the State of New Jersey is seeking a permanent injunction against defendant prohibiting his distribution of more than one S. & H. or Plaid Trading Stamp for each ten cents of motor fuel purchased at defendant's Esso service station. It is conceded that defendant has been issuing three such trading stamps for each ten cents of fuel purchased.

The State contends that under *Sperry & Hutchinson Co. v. Margetts*, 25 *N. J. Super.* 568 (Ch. Div. 1953), aff'd 15 *N. J.* 203 (1954), the distribution of more than one trading

stamp for each ten cents of motor fuel purchased violates *N. J. S. A.* 56:6–2(e) since it constitutes a "rebate, allowance, concession or benefit" permitting unlawfully the obtaining of motor fuel "from a retail dealer below the posted price or at a net price lower than the posted price applicable at the time of the sale." It claims that *Margetts* sets forth the limit beyond which the issuance of trading stamps becomes such an illegal rebate, allowance, concession or benefit.

In *Margetts* the transaction before the court involved the issuance of trading stamps at the rate of one stamp for each ten cents of motor fuel purchased. The court reasoned that such stamps constituted a cash discount in the amount of 2.08% on every purchase and defined a cash discount as "a term of payment merely, not a price adjustment; it is a mode of financing, not a reduction in the price." It stated that a cash discount is a financial inducement to the customer to pay bills on or before the date specified in a sales invoice, a reward for prompt payment (usually 1% or 2% if the bill is paid in ten days) and, therefore, a nonoperating item rather than a deduction from the sales price.

The State argues alternatively, as follows:

(1) Since *Margetts* involved what the court considered a little better than a 2% cash discount, a trade practice long established, the giving of trading stamps in excess of one for each ten cents purchased of motor fuel violates such established trade practice. Accordingly, it is argued, it ceases to be a mere cash discount and becomes a rebate prohibited by the statute.

(2) The cash discount theory of *Margetts* should be reexamined because, in fact, it was based on an erroneous economic concept, there being no true cash discount involved at the retail level.

Taking up the State's second argument first, there is ample evidence in this case from the expert witnesses for both the State and the defendant indicating that, at least under present economic theory, the cash discount principle is inapplicable to retail sales and is truly only applicable to

sales from a manufacturer to a wholesaler or retailer, or from a wholesaler or distributor to a retailer. The experts indicate that these are the only situations where credit is extended and where it is beneficial to the seller, in exchange for prompt payment of bills, to afford the purchaser a 1% to 2% cash discount. They testified that at a retail gasoline station there is really no trade incentive to the retailer to give a cash discount by way of trading stamps or otherwise, since the purchaser is always paying cash at the time of purchase. Their testimony would also support a finding that there is no real relationship between a cash discount and the very flexible discount rate that member banks pay from time to time to the Federal Reserve Bank for moneys borrowed. There is also evidence which would substantiate a finding that one stamp now represents a 2½%–3% "cash discount," (assuming it is such a discount) and that such stamps are used to stimulate business — *i. e.,* as a promotional or incentive device to bring in more business in places in which they are given. As in *Margetts,* this percentage is based on the value of the merchandise which may be obtained therefor by way of redemption at the stamp centers. The cash redemption value of each stamp, redeemable by the trade stamp company, is one mill — or $1.20 for a book of 1200 stamps.

■ It may very well be, as the State contends, that the theory of *Margetts* should be reconsidered in the light of the evidence in this case and that, therefore, the giving of even one trading stamp for ten cents of motor fuel should be considered illegal under the statutory provision as a rebate.[1] But such a re-evaluation of *Margetts* cannot be made

---

[1]See *Hogue v. Kroger Company,* 213 *Tenn.* 365, 373 *S. W.* 2d 714 (Sup. Ct. 1963) ; *Colgate-Palmolive Company v. Elm Farm Foods Co.,* 337 *Mass.* 221, 141 *N. E.* 2d 861, 866 (Sup. Jud. Ct. 1958) ; *Colgate-Palmolive Company v. Max Dichter & Sons, Inc.,* 142 *F. Supp.* 545 (D. Mass. 1956). See also, Note, 105 *U. Pa. L. Rev.* 242, 257 (1956).

by a trial court; it is bound by the Supreme Court decision in that case. *Russ v. Metropolitan Life Ins. Co.*, 112 *N. J. Super.* 265, 284 (Law Div. 1970).[2] Moreover, the constitutionality of the statutory provision here involved was later upheld in *Fried v. Kervick*, 34 *N. J.* 68 (1961), and at that time the Supreme Court, in effect, reaffirmed its decision in *Margetts*. It stated that the ban on rebates and discounts from the posted price since *Margetts* had not proved as successful as was expected and that this lack of success might be due to the discussion in the Chancery Division opinion in *Margetts* casting doubt on the constitutionality of that enactment. It indicated that "removal of those doubts may provide the panacea" (at 83). Additionally, the Legislature appears to have acquiesced in the *Margetts* holding that trading stamps should not be considered unlawful rebates under a later statute involving the regulation of pharmacists. See *Supermarkets Gen. Corp. v. Sills*, 93 *N. J. Super.* 326, 333 (Ch. Div. 1966) involving *L.* 1965, *c.* 120 (*N. J. S. A.* 45:14–12, subd. f).

Obviously the hoped for panacea has not been provided by holding *N. J. S. A.* 56:6–2(e) constitutional, since the evidence in this case indicates that retail price wars in the gasoline industry continue by way of giveaways and other devices, as well as by the giving of more than single trading stamps.

Under the circumstances, as far as the State's contentions are concerned, the court is limited to determining whether the giving of more than a single trading stamp is a violation

---

[2]*Inganamort v. Fort Lee*, 120 *N. J. Super.* 286 (Ch. Div. 1972), is not to the contrary. There the trial court found substantial factors distinguishing the case before it from the Supreme Court case which it was claimed had already decided the issue involved. Here there are no such factors. In this case the court would be required to reject the economic theory and the holding of *Margetts* that actually a trading stamp is a cash discount—a mode of financing—, rather than a rebate or price reduction at the retail level.

of the statute. Issuing a single trading stamp for each ten cents of motor fuel purchased is legal, according to *Margetts*.

Defendant argues that he instituted the triple stamp practice in order to meet competition of gasoline stations in his area, some of which were selling at a lower price than normally established, and others of which were involved in giveaways of prizes or various commodities, thereby impairing defendant's competitive position. He contends that *Margetts* is not limited to the issuance of single trading stamps, but rather holds that trading stamps *per se* represent a cash discount which is permissible under the statute, and accordingly, any number of trading stamps may be given without constituting a violation of the statute.

Defendant further contends that if *Margetts* stands for the position that only single trading stamps may be given, he is being unlawfully discriminated against by the State. In support of this contention he claims that the State is not precluding his competitors from giveaways and other competitive devices equally destructive of the purpose of the statute herein involved — namely, to prevent gasoline retail price wars and unfair or fraudulent sales practices. *Fried v. Kervick, supra,* 34 *N. J.* at 79, 81.

Indeed, the regulations of the Division of Taxation, Motor Fuels Tax Bureau (*New Jersey Administrative Code* 18:19-2.8(a)) provide that no motor fuel retail dealer shall give away anything of value when such giveaway is conditioned upon the purchase of motor fuel and would have the tendency to produce sharp and drastic price reductions, create price wars, or foster instability throughout the industry. Any such giveaway in connection with so-called anniversaries, grand openings, or similar occasions, is prohibited. The regulation itself, however, does not preclude a giveaway which is not connected with the purchase of motor fuel. The Attorney General has advised the court that the Director of the Division of Taxation now interprets this regulation in accordance with the rationale of Judge Mintz's opinion in *United Stations of N. J. v. Getty Oil Co.,* 102 *N. J. Super.*

459 (Ch. Div. 1968), aff'd *Del Spina v. Gelly Oil Co.,* 54 *N. J.* 150 (1969),[3] so as to preclude as well giveaways or gifts not conditioned on the purchase of motor fuel. It would appear that this interpretation should now be incorporated as part of the regulation if this is the Director's position in order that all gasoline stations know of the change in view and policy of enforcement. See *N. J. S. A.* 56:6–6.

Additionally, it may be necessary that the regulations be reviewed and revised to prohibit other existing or reasonably foreseeable competitive devices by gasoline retailers which violate the statutory provision and its purposes. One such device disclosed by the evidence is card-punching, a practice pursuant to which after a certain number of purchases and resulting punching of a customer's card by the retailer the customer is given bonus trade stamps. Otherwise, there may very well be a constitutional problem of equal protection. See *Southern Burlington County NAACP v. Tp. of Mount Laurel,* 119 *N. J. Super.* 164 (Law Div. 1972); *The Teagen Company, et al. v. Borough of Bergenfield,* 119 *N. J. Super.* 212 (Law Div. 1972). However, if the kinds of acts prohibited are set forth in reasonably clear fashion or are otherwise within the statutory ban, discretionary determinations at the state level as to the extent of enforcement of the various kinds of prohibited acts do not necessarily involve a matter of constitutional dimension. The State has substantial leeway in this area. See *Camden County v. Pennsauken Sewerage Auth.,* 15 *N. J.* 456, 469 (1954);

---

[3] *United Stations* concerned another section of the statute (*N. J. S. A.* 56:6–2(f)) here involved prohibiting retail dealers from using lotteries, prizes, punch-boards or other games of chance, "in connection with the sale of motor fuels." The court ruled that giveaway contests are violative of this section whether or not a purchase of motor fuel was required to participate therein. It reasoned that the basic purpose of the enactment—to regulate competitive practices in the motor fuel industry by seeking to discourage "such competitive devices of temptation"—was served by an interpretation that the game of chance was given "in connection with sale of motor fuels" even though an actual purchase was not necessary to obtain the game.

*Nordco, Inc. v. State,* 43 *N. J. Super.* 277, 288 (App. Div. 1957) ; *United States v. Hercules, Inc.,* 335 *F. Supp.* 102 (D. C. Kans. 1971) ; *Fried v. Kervick, supra,* 34 *N. J.* at 74, 75. *Cf. Hoy v. Capelli,* 48 *N. J.* 81 (1966).[4]

▊ I find nothing in the evidence which would in any way warrant a finding that either the State's enforcement policy or its endeavor to enjoin the trade stamp practice of defendant denies defendant equal protection of the laws under either the Federal or State Constitutions. This finding assumes that the State's position is, as it must be, that (1) giveaways or gifts, whether or not connected with the purchase of motor fuel, (2) bonus trading stamps via card-punching or any substantially similar device, and (3) as hereinafter indicated, the giving of items such as postage stamps, are illegal under the statutory provision here involved.

▊ One other issue raised by defendant relating to matters other than the legality of giving more than one trading stamp for each ten cents of motor fuel must be disposed of. The parties agree that fair trade contracts are no longer enforced in the gasoline industry, even though an amend-

---

[4]The mere reduction of price, shown by the evidence in this case as a competitive device engaged in by some retailers, as long as it is not below the posted price, however, does not violate the section here involved. Nevertheless, the extent to which, if at all, it involves pressure by the gasoline supplier on the retailer thus to compete either with or without compensating him fully for the price reduction, it conceivably might be legally assailable by the appropriate state agency or others under applicable law. Similarly, other competitive pressures by suppliers on retailers, if unlawful, may call for judicial redress. Again, what appears to be possibly deceptive price cutting practices indicated by the evidence (such as a large sign on the retailer's premises stating "2 cents off" without giving the price from which the reduction is made) may constitute fraudulent sales practices against which an attack may be made under applicable law other than *N. J. S. A.* 56:6–2(e). See, *e. g., N. J. S. A.* 56:6–2(a)–(d) ; 56:6–22 ; *Fried v. Kervick, supra; United Stations of N. J. v. Kingsley.* 99 *N. J. Super.* 574, 583 (Ch. Div. 1968) ; *Shell Oil Co. v. Marinello,* 120 *N. J. Super.* 357 (Law Div. 1972).

ment to the general fair trade statute[5] (*L.* 1938, *c.* 165) which would cover the industry was enacted the same day as the statutory provision here involved. Defendant argues that since gasoline is no longer fair-traded, *N. J. S. A.* 56:6–2(e) does not apply — *i. e.,* that it was intended to apply only in conjunction with enforcement of the Fair Trade Act. This contention is without merit.

In *Fried v. Kervick, supra,* the Supreme Court recognized that the instant provision may be "complementary to or as fortifying the fair trade act"; that "they both stem from legislative concern about unfair competition and unfair trade practices; [and that] 94.44% of all gasoline sold at retail is subject to fair trade contracts and therefore subject to the fair trade act." However, the court further stated that "even if the history of the gasoline industry shows * * * that breach of such contracts causes an evil of greater impact upon the public welfare and thus might be deemed to justify additional price control in aid of the fair trade act, we prefer to treat the presently assailed enactment as an individual piece of legislation. That approach seems advisable because *N. J. S. A.* 56:6–2(e) (and the remainder of the act as well) applies not only to fair traded gasoline but also to that sold without fair trade contracts." (34 *N. J.* at 75–76).

The remaining question is whether the giving by defendant of more than one trading stamp for each ten cents purchase of motor fuel violates *N. J. S. A.* 56:6–2(e) by constituting an illegal rebate, allowance, concession or benefit, thereby unlawfully permitting motor fuel to be obtained from a retailer below the posted price or at a net price lower than the posted price applicable at the time of sale. The answer must be in the affirmative.

*Margetts* in effect recognized what it considered a longstanding trade practice in validating the use of single trad-

---

[5]The general Fair Trade Act is to be found in *N. J. S. A.* 56:4–3 *et seq.*

ing stamps under the statute here involved. That long-standing practice was one permitting a discount of in the area of 2% on every purchase for cash. But the court did not intend, and in view of the purpose of the statute as outlined in *Kervick,* should not be deemed to have intended, a *carte blanche* approval of the giving of trading stamps generally, irrespective of the number distributed with each purchase. If the number of stamps issued with a purchase of motor fuel substantially exceeds the 2.08% cash discount standard allowed in *Margetts* — for example, in excess of 3% — , it violates the spirit and purpose of the provision here involved and the statute of which it is a part. Under the evidence in this case I find that giving more than one trading stamp for each purchase of ten cents of motor fuel violates that cash discount standard and, accordingly, is illegal. I find further that defendant's distribution of triple stamps results in a cash discount in excess of 6% and thus violates *N. J. S. A.* 56:6-2(e).

Permitting more than single trading stamps involves a substantial reduction in the posted price of the motor fuel at the time of sale. *Margetts* does not hold that trading stamps *per se* represent a cash discount not covered by the statutory prohibitions against rebates, allowances, concessions or benefits resulting in prices below the posted price. The rationale of *Margetts* is simply that the giving of one such stamp resulting in the customary or traditional approximately 2% cash discount to the purchaser is not banned by the language or purpose of *N. J. S. A.* 56:6-2(e), which is aimed at preventing price wars and fraudulent and unfair practices in the retailing of motor fuel. Thus, the court there said:

* * * the cash discount [of approximately 2%] * * * does not in any real sense work an inequality of price within the intendment of subdivision (e). Rather, it has reference to the terms of the sale, making for price parity in respect of all retail sales, either for cash or on credit. *The true cash discount of approximately 2% according to common practice,* bears no relation to the object and policy

of the law. It is not a trade discount nor a rebate or concession not concerned with the value of the sales related to the time and terms of payment.* * * The avowed purpose of this statutory regulation is the prevention, in the public interest, of fraudulent and unfair practices in the retailing of motor fuel. But there is no suggestion in the enactment itself of a design to outlaw *the true cash discount* as a means to this end. Indeed, its omission from the category of forbidden acts and conduct contained in subdivision (e) makes reasonably clear an intention *contra* * * * we cannot assume from the nature of the expressed policy that the Legislature had in view the interdiction of *this well established and commonly known trade practice of a discount for cash,* available to all alike. [15 *N. J.* at 208–209; emphasis supplied]

 There is abundant evidence in this case, and I find that the use of more than one trade stamp for each ten cents purchase of gasoline is a competitive weapon to attract sales and is a type of device leading to the price wars and unfair sales practices by dealers selling gasoline to the consuming public which the statute here involved was designed to preclude. *Fried v. Kervick, supra,* 34 *N. J.* at 78, 81; *Kingsley v. Miller,* 90 *N. J. Super.* 9 (App. Div. 1965): *United Stations of N. J. v. Getty Oil Co.,* 102 *N. J. Super.* 459 (Ch. Div. 1968), aff'd o.b. *Del Spina v. Getty Oil Co.,* 54 *N. J.* 150 (1969). See *Supermarkets Gen. Corp. v. Sills,* 93 *N. J. Super.* 326, 350 (Ch. Div. 1966). See also, *Rubbermaid, Inc. v. Claber Distributing Co. of Cleveland,* 3 *Ohio Misc.* 39, 205 *N. E.* 2d 410 (C. P. 1965); *Safeway Stores v. Oklahoma Retail Grocers Ass'n,* 322 *P.* 2d 179 (Okla. Sup. Ct. 1957), aff'd 360 *U. S.* 334, 79 S. Ct. 1196, 3 *L. Ed.* 2d 1280 (1959); *State of Minnesota v. National Food Stores, Inc.,* 1960 *Trade Cas.* § 69, 792 at 77, 178 (Minn. D. Ct.); *Trade Commission v. Bush,* 123 *Utah* 302, 259 *P.* 2d 304, 306 (Utah Sup. Ct. 1953).

I find, further, that the use of triple stamps by this defendant, allegedly to meet competition of other dealers engaged in giveaways and similar practices, has resulted in substantially reduced gallonage and earnings to other dealers in his competitive area and, in turn, has caused them or some of them to engage in similar or other sales practices

which tend to undermine the stability of the retail gasoline industry. As a result, there is a substantial erosion of the statutory purpose and a fostering of the very evils the statute intended to prevent.

In *Kingsley v. Miller, supra,* the court upheld the conviction of a gasoline retailer who gave a customer the option of double stamps or two cents off the posted price, where, in fact, the customer accepted two cents off the price. It held that the two cents represented a rebate prohibited by the statute. Under the facts of that case, the two cents rebate represented a discount of over 6% from the purchase price; the double stamps would have represented about a 5% discount from that price.

In *Supermarkets Gen. Corp. v. Sills, supra,* Judge Mintz held constitutional a statute (*L.* 1965, *c.* 120; *N. J. S. A.* 45:14–12) which permitted the State Board of Pharmacy to refuse an application for examination or suspend or revoke the certificate of a registered pharmacist for "grossly unprofessional conduct." Among other things, such conduct included "the distribution of premiums or rebates of any kind whatsoever in connection with the sale of drugs and medications *provided, however, that trading stamps and similar devices shall not be considered rebates for the purpose of this chapter."* (Emphasis suppled). With respect to the equal protection issue raised by reason of the statutory distinction between premiums or rebates on the one hand and trading stamps on the other, the court followed the holding of *Margetts* that such stamps were not rebates and represented a cash discount rather than a price adjustment. It then said:

Similarly, in the instant case the Legislature, in permitting the use of trading stamps as opposed to rebates or premium devices, apparently was distinguishing between a form of cash discount and what otherwise would comprise premiums or inducements to buy.

It was urged that the statute in its present form would not prohibit a pharmacist from giving "double or triple stamps" on prescription items, thereby frustrating the intent of the Legislature. *If,*

*however, a pharmacist issued trading stamps in excess of the normal discount for cash, such practice conceivably would be in violation of the letter and spirit of chapter 120.* I conclude that the quoted provision * * * does not contravene the Equal Protection Clauses * * *. [93 *N. J. Super.* at 348–349; emphasis supplied]

In my view the objective of achieving the broad purpose of *N. J. S. A.* 56:6–2(e), as well as the balance of the statute of which it is a part, requires that *Margetts* be read as permitting no more than single trading stamps—*i. e.,* the normal discount for cash. It also compels the conclusion that the issuance of more than one trading stamp with the purchase of ten cents of motor fuel contravenes the statutory provision. See *United Stations of N. J. v. Getty Oil Co., supra,* 102 *N. J. Super.* at 472-473, 475.

In support of a more liberal construction of *Margetts,* it is pointed out that a penal action may be maintained for a statutory violation;[6] and that, notwithstanding *Margetts'* having been in existence for 15 years, the Director has been relying on verbal warnings by investigators to retailers, instead of adopting a regulation, as to the illegality of multiple trading stamps. Hence, it is said, fairness requires that *Margetts* be interpreted as permitting the issuance of any number of trading stamps.

The contention that mere verbal warnings, rather than a regulation or other written communications to all retailers, are insufficient to sustain a penal action under the statute is sound. The present proceeding, however, is for an injunction. In any event, the notice problem will be taken care of by the Director's following the requirements relating thereto set forth below. Moreover, merely because a penalty may also be sought for violation of a regulatory statute such as *N. J. S. A.* 56:6–2(e) "does not prevent a court from reading the statute in relation to the mischief and evil

---

[6] *N. J. S. A.* 56:6–3 permits the imposition of a maximum fine of $200 and a maximum suspension of defendant's license for 30 days for a violation of the section here involved.

sought to be suppressed. * * * While a penal statute is not to be extended by implication * * *, its clear implication and intendement is not to be denied. [N]or is a construction of a penal statute that will aid in its evasion to be favored." *Kingsley v. Miller, supra,* 90 *N. J. Super.* at 15–16. As indicated, in my view the purpose of the statutory provision here involved is furthered by an interpretation of *Margetts* which limits the issuance of trading stamps to one stamp for each ten cents of motor fuel purchased; a contrary construction I find will result, and in fact has resulted, in the kind of trade evil the statute intended to prohibit.

It has been contended, in support of giving a broader interpretation to *Margetts,* that economic reality requires that the discount rate be permitted to be flexible, since what may be deemed an excessive rate at one time may be realistic at another. Reliance is placed on the member bank discount rate of the Federal Reserve Bank of New York, which was 1½% in April 1954 when *Margetts* was decided, and is now much higher.

I find, however, from the expert evidence in the present case, that there is in fact no relationship between the cash discount discussed in *Margetts* and the discount rate that member banks pay from time to time to the Federal Reserve Bank for moneys borrowed. The cash discount is a financial inducement to pay promptly and is customarily and inflexibly approximately in the area of 2%. The discount or interest rates that banks pay to the Federal Reserve Bank for borrowings have an entirely different purpose which requires flexibility.

At the hearing it developed that at least one retailer gave postage stamps, instead of trading stamps, with purchases of motor fuel. The question has arisen as to whether the issuance of such postage stamps is legal. It is said that since a trading stamp may be redeemed for merchandise or cash (even though the cash is in a lesser amount than the value of the merchandise) and a postage stamp can also be re-

deemed for cash or the service of the postal department secured, any distinction between postage and trading stamps under *Margetts* would be invidious and untenable.

I am unable to accept this argument. *Margetts* involved trading stamps and, in view of the purpose of the statute, must be limited not only to such stamps but also to allowing the issuance of only single trading stamps as already stated. Postage stamps, irrespective of the percentage of discount from the purchase price they involve, in my opinion, are tantamount to the cash rebate or concession held illegal in *Kingsley v. Miller, supra.*

There is no doubt that defendant has habitually violated the statutory provision and policy here involved by the issuance of triple trading stamps. Plaintiff, therefore, is entitled to a permanent injunction under the statute restraining defendant from giving more than one trading stamp for the purchase of ten cents of motor fuel. *N. J. S. A.* 56:6–4 (e) ; *Hoffman v. Garden State Farms, Inc.,* 76 *N. J. Super.* 189, 200–201 (Ch. Div. 1962) ; *Securities & Exchange Comm'n v. Northeastern Financial Corporation,* 268 *F. Supp.* 412, 414 (D. N. J. 1967). See also, *United Stations of N. J. v. Kingsley, supra; United Stations of N. J. v. Getty Oil Co., supra.*

However, as already indicated, the evidence shows two other devices presently in use in defendant's competitive area and elsewhere which plainly fall within the prohibitions of *N. J. S. A.* 56:6–2(e) and constitute at least equally destructive competitive practices in the retail gasoline industry: (1) giveaways, whether or not connected with the purchase of motor fuel, and (2) the issuance of bonus stamps in connection with the practice of cardpunching or any substantially similar practice. In addition, in my view, the giving of postage stamps with a purchase of motor fuel violates the statute.

Fairness not only to this defendant but to all gasoline retailers in the State requires that all of these practices be publicly declared and held illegal. See *United Stations of*

*N. J. v. Getty Oil Co., supra,* 102 *N. J. Super.* at 473-474. Of course, the extent to which and the manner in which these various specific prohibitions — excessive trading stamps, giveaways, cardpunching, the issuance of postage stamps — are enforced are matters left to the State's discretion, depending in large measure on what it considers the most effective method of effectuating the statutory policy within the limits of available enforcement personnel.

In any event, the Director must give gasoline retailers throughout the State ample written notice of the illegality of each of these competitive devices. I leave to his discretion whether he takes this action by the adoption of appropriate regulations or the giving in some fashion of adequate written notice to all of the gasoline retailers operating in this State of the conclusions reached in this opinion.

A permanent injunction will issue against defendant's giving more than single trading stamps, as hereinbefore stated, effective 15 days after the aforesaid notice has been given.