CONLEY, J. T. C.
Plaintiff processes and markets milk. As part of its milk-processing procedure it uses certain cleaning and sanitizing agents to remove bacterial contamination to produce a safe and marketable product in accordance with state and federal law. The Director of the Division of Taxation assessed sales tax upon plaintiff’s purchases of chemicals used to clean and sanitize its milk lines, fillers and tanks. The assessment was in the amount of $6,803.90[1] and was for the period from January 1, 1974 to December 31, 1976. Plaintiff has appealed from the assessment and contends that its purchases of chemicals were exempt from *94 sales tax pursuant to N.J.S.A. 54:32B-8.20 or N.J.S.A. 54:32B-8.16.[2]
It appears from the testimony that when plaintiff’s production week starts, plaintiff first sanitizes its milk lines with hot water and two types of chlorine. This kills bacteria, which would otherwise reduce the shelf-life of plaintiff’s product. Plaintiff uses milk brought to its plant by trucks whose container compartments have been sanitized with iodine. The raw milk is pumped into a silo and after being pasteurized it is pumped into a tank which has also been sanitized with the chlorine solution. By law the raw milk tank must be emptied and washed at least every 72 hours. It is not disputed by the Director that if the bacterial film were not removed, the buildup would prevent the use of plaintiff’s equipment in the milk processing operation.
One of plaintiff’s witnesses was Richard Bakka, whose company manufactures most of the chemicals used by plaintiff. Bakka described the uses of the various chemicals. It was his opinion that milk processing is a single cycle in which no step can be eliminated, even though he stressed the importance of sanitizing plaintiff’s equipment before the milk operation begins.
The Director called as his witness Calvin Tabler, project coordinator of the milk control program for the New Jersey Department of Health. Tabler stated that a milk processing operation starts when raw milk is pumped into a pasteurizing unit. He said the process continues as the milk is pasteurized, cooled and stored, and it ends when the milk is put into containers and the containers are sealed. It was Tabler’s opinion that a cleaning operation is separate from a milk processing operation.
It is my conclusion that plaintiff’s milk processing operation and its cleaning and sanitizing operation are distinct. The *95 purpose of processing milk is to transform raw milk into a safe and marketable product. The direct process begins when raw milk is put into a pasteurizer and ends when containers of pasteurized and cooled milk are sealed. The cleaning and sanitizing procedure is a separate process which both precedes and follows the processing of the milk. Indeed, plaintiff takes affirmative steps to insure that the cleaning and sanitizing chemicals do not become an adulterant in its milk. For example, plaintiff rinses its lines and equipment several times with water after the chemicals have been used and it discards the initial gallons of milk which pass through the equipment after it has been cleaned. Plaintiff also has two sets of certain lines and tanks so that one set can be closed down and sanitized while the other is used to process milk. The fact that plaintiff’s milk and its cleaning and sanitizing chemicals are kept separate is indicative of the separate nature of plaintiff’s milk processing and its cleaning and sanitizing operation.
The exemption from sales tax relied upon by plaintiff, set forth in N.J.S.A. 54:32B-8.20, provides that:
Receipts from sales of materials, such as chemicals and catalysts, used to induce or cause a refining or chemical process, where such materials are an integral or essential part of the processing operation, but do not become a component part of the finished product are exempt from the tax imposed under the Sales and Use Tax Act.
It is clear from the quoted language that the processing operation dealt with in the statute is only that process which results in a finished product, in this case the various milk products of plaintiff. Plaintiff’s cleaning and sanitizing operation is separate from the milk processing operation and does not produce a finished product. The chemicals involved in this case are used only in the cleaning and sanitizing operation, not in the milk processing operation. Even if the chemicals are used to induce or cause a refining or chemical process, as alleged by plaintiff, the refining or chemical process is part of the cleaning and sanitizing operation, not the milk processing operation. Since the chemicals are not used in the milk processing procedure that results in marketable milk products, their purchase does not fall within the sales tax exemption established by N.J.S.A. 54:32B=8.20.
*96 There are only two reported decisions involving this statutory provision. The court in Ramac Explosives, Inc. v. Taxation Div. Director, 125 N.J.Super. 154, 309 A.2d 465 (App.Div.1973), aff’d but mod., 64 N.J. 551, 319 A.2d 65 (1974), held that the sale of dynamite to stone quarries for use in blasting (which produced stone as an end product) was exempt from sales tax under the exemption involved here because dynamite is a chemical used to induce or cause a refining process. In Grinding Balls, Inc. v. Taxation Div. Director, 1 N.J.Tax 514, 176 N.J.Super. 620, 424 A.2d 470 (Tax Ct. 1980), the court held that purchases of metal grinding balls (which reduced the size of certain materials into a powdery form) were not exempt because they were not used to induce or cause a refining or chemical process. The latter court observed that its facts differed from Ramac in that no extraneous matter was removed from the ground particles by the grinding process. Neither of these cases is particularly pertinent to the facts involved in this matter because each dealt only with one processing operation, not anything like the two distinct processes of plaintiff’s operation.
Plaintiff also asserts that its purchases of chemicals are exempt from sales tax pursuant to N.J.S.A. 54:32B-8.16, which provides an exemption from tax for sales of certain property used and consumed on farms. N.J.S.A. 54:32B-8.16 is as follows:
Receipts from sales of tangible personal property ... for use and consumption directly and exclusively in the production for sale of tangible personal property on farms, including stock, dairy, poultry, fruit, fur-bearing animals, and truck farms, ranches, nurseries, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards are exempt from the tax imposed under the Sales and Use Tax Act.
The Director adopted a regulation to clarify the application of this exemption. Under N.J.A.C. 18:24-19.2 the Director defined the word “farms” to mean “an enterprise using land and improvements thereto for agricultural and horticultural production for the sale of tangible personal property.” One of the examples of farms enumerated in the regulation is an enterprise producing dairy products. N.J.A.C. 18:24-19.2 also contains a definition of “dairy farming”:
*97 “Dairy farming” means the business of breeding, feeding and raising of cattle and other milk-producing animals, and the production of feed for them by the owner of such animals, but does not include operations such as the making of butter, cheese or ice cream.
This regulation of the Director is in accord with the apparent legislative purpose underlying the statutory exemption. If plaintiff were to qualify for the exemption it would have to demonstrate that its operations come within the terms of this regulation.
Plaintiff did not establish that its milk processing operation constitutes a dairy farm. Although plaintiff introduced testimony as to the milk processing operation itself, plaintiff did not establish that it uses its land as opposed to its improvements for agricultural production or that it is in the business of breeding, feeding and raising cattle and other milk-producing animals. Therefore, I cannot conclude that plaintiff’s facility is a dairy farm within the meaning of N.J.S.A. 54:32B-8.16. For the same reason, I cannot conclude that plaintiff’s purchases of chemicals come within the terms of N.J.A.C. 18:24 19.4(f)(5), which provides an exemption for certain property used to handle and preserve farm products upon farm premises. I therefore find that plaintiff’s purchases of chemicals are not exempt from sales tax under N.J.S.A. 54:32B-8.16.
The Clerk of the Tax Court will enter judgment dismissing plaintiff’s complaint.

Plaintiff originally disputed other portions of the assessment. However, these were resolved by way of settlement audit conference on January 20, 1981 and are not reflected in the amount stated above.

These exemptions were codified as N.J.S.A. 54:32B-8(t) and 8(p), respectively, prior to the enactment of L. 1980, c. 105 (§§ 32 and 28), effective September 11, 1980.