AIRWORK SERVICE DIVISION, A DIVISION OF PACIFIC AIRMO-
TIVE CORPORATION, A CALIFORNIA CORPORATION, AND
A SUBDIVISION OF PUREX CORPORATION LTD., A CALI-
FORNIA CORPORATION, PLAINTIFF-APPELLANT, v. DI-
RECTOR, DIVISION OF TAXATION, DEFENDANT-RESPON-
DENT.

Argued November 7, 1983—Decided July 23, 1984.

Gerald C. Neary argued the cause for appellant (*Pitney, Hardin, Kipp & Szuch,* attorneys; *Gerald C. Neary* and *Jeri E. Ruscoll,* on the briefs).

*Harry Haushalter,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*John W. Boyd,* a member of the New Mexico bar, argued the cause for *amicus curiae* Consumer Bureau, Inc. (*Pollan and Pollan,* attorneys; *Steven E. Pollan,* of counsel and on the brief).

*Robert A. Goodsell* submitted a brief on behalf of *amicus curiae* American Civil Liberties Union of New Jersey (*Irwin, Post & Rosen,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

Plaintiff, Airwork Service Division (Airwork or taxpayer) is in the business of repairing airplane engines. All repairs are made at Airwork's facilities in New Jersey, and the repaired engines are then returned to customers, generally out of state. Defendant, Director, Division of Taxation (Director) notified Airwork in September 1973 of its intention to assess it for sales tax on services rendered between July 1, 1970 and June 30, 1973, under the New Jersey Sales and Use Tax Act, *N.J.S.A.* 54:32B–1 to –29 (Act). Airwork filed an appeal of the assessment with the Division of Tax Appeals in 1975, which was later heard by the Tax Court on cross-motions for summary judgment. The Tax Court held the assessment valid, granting the Director partial summary judgment. 2 *N.J.Tax* 329 (1981). Airwork appealed and the Appellate Division affirmed. We granted the taxpayer's petition for certification. 93 *N.J.* 246 (1983).

I

The question that we first address is whether the underlying transactions are subject to the sales tax under the terms of the Act.

*N.J.S.A.* 54:32B–3 imposes a sales tax on the sale of tangible personal property and on the performance of certain services. *N.J.S.A.* 54:32B–2(f). The repair of airplane engines is a service covered by the Act. *N.J.S.A.* 54:32B–8.35. The taxpayer stresses, however, that while the repair services on these airplanes are rendered in New Jersey, the engines are later returned to out-of-state customers. It is contended that because the sale occurs at the place of delivery, the services

should be deemed to have been sold or completed at the site to which the returned property is delivered. The taxpayer points to provisions of the Act that treat the sale of goods and services equivalently, *e.g.,* *N.J.S.A.* 54:32B–2(i) (defining "vendor"). Because the Act intends to tax only sales made within New Jersey, the argument continues, the Legislature cannot have intended to tax services performed on goods to be delivered to customers in other states.

This argument is not persuasive. It assuredly does not attain constitutional dimensions. In *Evco v. Jones,* 409 *U.S.* 91, 93, 93 *S.Ct.* 349, 350, 34 *L.Ed.*2d 325, 328 (1972), the Court distinguished between a "tax * * * validly imposed on the service performed in the taxing State," and "a tax levied on the gross receipts from the sales of tangible personal property in another State," holding only the latter unconstitutional. Notwithstanding that the Legislature may have treated goods and services similarly for most purposes, it is entirely possible that it recognized the difference between the place where the finished product is delivered and where services upon it are rendered, in terms of subjecting services to taxation in a case such as this. *See Fisher-Stevens, Inc. v. Director, Div. of Taxation,* 121 *N.J.Super.* 513 (App.Div.1972), certif. den., 62 *N.J.* 575 (1973).

█ The critical issue is whether the Legislature intended to tax services such as those performed by Airwork. In looking first to the statutory language as such, we are struck by the fact that the services performed in New Jersey on goods delivered out of state are not specifically exempted from the application of the Act. *N.J.S.A.* 54:32B–3(b)(2). We have recently acknowledged, in a somewhat variant context, that such exemptions, if they are present, must be narrowly and strictly construed and, if not clearly applicable, the underlying transaction must be amenable to the tax. *See Metpath v. Director, Div. of Taxation,* 96 *N.J.* 147 (1984) (provision of Act exempting from tax all catalysts "that do not become a component part of finished product" is limited to chemicals used to produce tangi-

ble personal property); *Tuscan Dairy Farms, Inc. v. Director, Div. of Taxation,* 4 *N.J.Tax* 92 (1982).

The Tax Court here determined that the Act's failure to include an exemption from the sales tax of services to property delivered out of state was purposeful. 2 *N.J.Tax* at 345. Such an exemption was expressly contained in the New York Sales and Compensating Use Tax Laws, § 1101 *et seq.* (McKinney 1979), which served as a model to the New Jersey Act. "Where the Legislature adopts a new law, using as a source a statute theretofore enacted in another jurisdiction, but omits a provision of the source statute, the omission is construed as being deliberate." 2 *N.J.Tax* at 346. Clearly, the rendition of services in conjunction with the delivery of products out of state is not uncommon. *E.g., Fisher-Stevens, Inc., supra,* 121 *N.J.Super.* 513. Accordingly, we adopt the Tax Court's conclusion that the Legislature purposefully chose not to exempt these services. *See Evco v. Jones, supra,* 409 *U.S.* 91, 93 *S.Ct.* 349, 34 *L.Ed.*2d 325; *see also Bank of America v. Webster,* 439 *F.*2d 691 (9th Cir.1971).

The taxpayer, however, points to historical circumstance to support its contention. The Act was passed in 1966 to be effective July 1 of that year. On June 28, 1966 the Sales and Use Tax Bureau of the Division of Taxation issued a press release, containing questions and answers about the Act, that was published on July 11, 1966, in a commercial tax news service—Report 162 of the Commerce Clearing House *New Jersey Tax Reports.* The press release included the following statement:

> Charges for repairs where the articles upon which the work is performed are delivered, upon completion, pursuant to contract, to a purchaser outside the State for use outside the State are exempt from the sales tax.

Airwork claims that this published statement is equated with an official policy adopted by the Division of Taxation. Nevertheless, the issue of the taxability of services performed for out-of-state customers was being actively litigated. It was—or should have been—well known to similarly situated taxpayers

that the Division of Taxation was vigorously taking the position that such services were taxable. The issue was finally resolved in 1972 by the decision of the Appellate Division in *Fisher-Stevens, Inc., supra,* 121 *N.J.Super.* 513, affirming the 1971 determination of the Division of Tax Appeals, Docket S.T. 109, which held that a company providing direct mailing services in New Jersey with materials sent chiefly to addresses in other states on behalf of out-of-state customers was subject to the sales tax for the services performed in New Jersey.

The taxpayer further notes that following the enactment of the statute, the Legislature failed to object to the Division's "position," ostensibly appearing in the 1966 press release. Airwork draws the conclusion that the Division's policy therefore met with legislative approval and conformed to the Legislature's intent. In general, the legislative attitude towards enacted legislation is a marginal tool of interpretation, even under the most propitious circumstances. 2A *Sutherland, Statutory Construction* § 48.06 (4th ed. 1972). The generally limited usefulness of coupling administrative practice with legislative inaction to extrapolate legislative intent is further reduced when the agency attitude itself is unofficial and equivocal. As the Division points out, the earlier press release was never officially approved or even authenticated as an official pronouncement. Further, to the extent there were any officially endorsed statements on this subject matter, these were set forth in the general instructions accompanying the official tax returns. The instructions did not authorize or permit the exclusion of services performed on goods delivered outside New Jersey. Moreover, following its successful litigation of the issue in 1972, the Division affirmatively sought to dispel the possible confusion generated by the earlier press release by specifically stating, in two separate issues of *State Tax News,* a bi-monthly newsletter published by the Division itself, that the sales tax did apply to repair services performed in New Jersey, regardless of where the repaired property was to be delivered.

██ We note that courts have acknowledged that "the practical administrative construction of a statute over a period of years without interference by the Legislature is evidence of its conformity with the legislative intent and should be given great weight by the courts." *Automatic Merchandising Council v. Glaser,* 127 *N.J.Super.* 413, 420 (App.Div.1974) (interpreting Sales and Use Tax Act); *see Malone v. Fender,* 80 *N.J.* 129 (1979). Nevertheless, the court will consider this factor only when it is not satisfied that the Legislature's intent cannot otherwise be determined by a critical examination of the purposes, policies, and language of the enactment. When such circumstances point strongly to the imputation of a particular legislative intent, they may not be outweighed or overcome simply by a countervailing administrative practice. *See Fedders Corp. v. Director, Div. of Taxation,* 96 *N.J.* 376 (1984) (language, purpose, and policy of "indebtedness" clause in New Jersey Corporation Business Tax Act evidenced legislative intent to exclude *bona fide* debt owed to affiliated corporation, notwithstanding contrary administrative interpretation that was itself confirmed by administrative rule and longstanding, uniform agency practice); *Mobay Corp. v. Director, Div. of Taxation,* 96 *N.J.* 407 (1984) (same).

We conclude, therefore, that the Act authorizes the imposition of a sales tax on the performance of services rendered in the state on goods to be delivered to customers outside the State.

## II

██ The Division made no attempt to collect taxes on taxpayer's repair work during the early years of the sales tax, despite its having audited plaintiff's books during the summer of 1967. Because the taxpayer assertedly relied on the Division's previous position, it argues that the tax assessment against it is improper.

This argument is analogous to one based on principles of equitable estoppel. In *New Jersey Turnpike Auth. v. Washington Tp.*, 137 *N.J.Super.* 543, 552 (App.Div.1975), aff'd o.b., 73 *N.J.* 180 (1977), the court remarked that "the application of principles of estoppel [is] particularly inappropriate where the collection of taxes by a public body is involved, except in unusual circumstances." *See also Bayonne v. Murphy & Perrett Co.*, 7 *N.J.* 298 (1951) (taxing authority is not bound or estopped by unauthorized acts of its officers). In *Skulski v. Nolan*, 68 *N.J.* 179, 198 (1975), this Court recognized that "the concept of estoppel is not applied as readily against the public as against private persons." *Id.; see Zigmont v. Bd. of Trustees, Teachers' Pension & Annuity Fund*, 91 *N.J.* 580 (1983). The issue thus becomes whether the circumstances of this case warrant the unusual remedy of estopping the government from collecting taxes because the taxpayer has assertedly relied on earlier statements by the taxing authority.

A number of cases in other jurisdictions have refused to allow an estoppel against a taxing authority. *E.g., Crane Co. v. Arizona State Tax Comm'n*, 63 *Ariz.* 426, 163 *P*.2d 656 (1945), overruled on other grounds *sub nom. Duhame v. State Tax Comm'n*, 65 *Ariz.* 268, 179 *P*.2d 252 (1947); *Market Street Ry. Co. v. California State Bd. of Equalization*, 137 *Cal.App.* 2d 87, 290 *P*.2d 20 (Dist.Ct.App.1955); *La Societe Francaise v. California Employment Comm.*, 56 *Cal.App.*2d 534, 133 *P*.2d 47 (Dist.Ct.App.1943). The application of this equitable doctrine is extremely fact-sensitive. The Division stresses that Airwork has not demonstrated actual or reasonable reliance on any definitive official conduct on the part of the Division. As noted, no express exemption is provided by the Act itself. The press release, published in a private, commercial tax news service, was not shown to be an official statement or pronouncement. In addition, according to the Division, that release contained inaccuracies and outdated information, suggesting a lack of reliability. *See Iowa Movers & Warehousemen's Ass'n v. Briggs*, 237 *N.W.*2d 759 (Iowa 1976) (taxing authority

not estopped from imposing tax contrary to past enforcement policy when taxpayer failed to prove actual reliance); *see also Dixon v. United States*, 381 *U.S.* 68, 72–73, 85 *S.Ct.* 1301, 1304–1305, 14 *L.Ed.*2d 223, 227 (1965) (Commissioner may retroactively correct mistakes of law in application of tax laws to particular transactions, even where taxpayer may have relied to his detriment on past practice). Also, the Division, in active litigation, asserted the taxability of such transactions. *Fisher-Stevens, Inc., supra,* 121 *N.J.Super.* 513. Moreover, the official instructions accompanying the sales tax returns did not mention or recognize any exemption for services provided out-of-state customers.

Both Airwork and *amicus* Consumer Bureau, Inc., rely on cases from other jurisdictions in which courts have not permitted taxing authorities to change or modify their position. However, many of these cases involve the power to apply new regulations retroactively, *see, e.g., Illinois Bell Tel. Co. v. Allphin,* 95 *Ill.App.*3d 115, 50 *Ill.Dec.* 739, 419 *N.E.*2d 1188 (1981); *Appeal of Denman,* 120 *N.H.* 568, 419 *A.*2d 1084 (1980); *Department of Revenue v. Family Hosp., Inc.,* 105 *Wis.*2d 250, 313 *N.W.*2d 828 (1982); *Hercules Powder Co. v. State Bd. of Equalization,* 66 *Wyo.* 268, 208 *P.*2d 1096 (1949), reh'g denied, 66 *Wyo.* 309, 210 *P.*2d 824 (1948). The instant case appears to involve the converse situation, namely, the application of the controverted tax to cover previous tax years is in accord with the enabling tax statute, consistent state fiscal concerns, and legislative policy.

The Legislature presumably has been long aware of the issues implicated in the taxability of services performed for out-of-state customers. In 1974, the Legislature passed A. 1628, designed to exempt from taxation repair work on tangible property delivered to out-of-state customers. This bill was vetoed by the Governor, whose veto message explained:

I strongly believe that such an amendment would represent a substantial and excellent step forward in reforming the present business tax structure that now plagues the economy of this State. However, I cannot overlook the fact that

enactment of such an amendment may result in the loss of approximately $5 million in tax revenue for the State. During this time of fiscal crisis, it would be irresponsible for me to allow such an amendment to become law without having the ability to recoup the loss through another revenue raising device.

A similar bill was finally enacted in 1977. *L.*1977, *c.* 54, *N.J.S.A.* 54:32B–3(b)(5) (as amended). The committee statements accompanying both bills reflect legislative disapproval of a tax on such services, as it would impose hardship on New Jersey businesses, some of which may have relied on the Division's earlier failure to impose the tax. It is more significant, however, that in enacting *L.*1977, *c.* 54, the Legislature itself did not choose to apply the statutory exemption retroactively. Further, the Governor's veto in 1974 of previous legislation reinforces the policy that a retroactive recognition of the exemption for such services would be contrary to public policy.

Other states have announced a *per se* rule against estopping the government from collecting taxes. *See, e.g., State v. Maddox Tractor & Equip. Co.,* 260 *Ala.* 136, 69 *So.*2d 426 (1953); *Claiborne Sales Co., Inc. v. Collector of Revenue,* 233 *La.* 1061, 99 *So.*2d 345 (1957); *Henderson v. Gill,* 229 *N.C.* 313, 49 *S.E.*2d 754 (1948) (in collection of sales tax, error of an administrator should not serve to redistribute tax burden as imposed by the Legislature). We conclude, under the circumstances of this case, that when a sales tax statute specifically provides for the taxation of particular transactions and does not explicitly provide for the tax exemption of such transactions, estoppel should not generally be available to a subject taxpayer. The strong public and governmental interest in the collection of the tax imposed by the Legislature will usually outweigh the asserted reliance by a taxpayer, especially when such reliance is claimed to be based on unofficial statements and equivocal administrative inaction.

In summary, we hold that principles of equitable estoppel or similar considerations do not prevent the collection of the sales taxes against the taxpayer as determined by the Director.

## III

■ Airwork argues that before changing its position, the Division was obliged to follow the procedures of the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –15, governing the promulgation of administrative rules. The Tax Court concluded, however, that the Division's tax assessment did not constitute rule-making and therefore was not subject to the APA. 2 *N.J.Tax* at 340–41. While *N.J.S.A.* 54:32B–24(1) gives the Division the power to make rules, the Director, under *N.J.S.A.* 54:32B–24(6), has the power "[t]o assess, determine, revise and readjust the taxes imposed by this act." The Tax Court held that in assessing the tax against Airwork, the Division was acting pursuant to this power. The Appellate Division affirmed the Tax Court. We agree.

*N.J.S.A.* 52:14B–2(e) defines an administrative agency "rule" as follows:

"Administrative rule" or "rule," when not otherwise modified, means each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes the amendment or repeal of any rule, but does not include: (1) statements concerning the internal management or discipline of any agency; (2) intraagency and interagency statements; and (3) agency decisions and findings in contested cases.

If an agency determination or action constitutes an "administrative rule," then its validity requires compliance with the specific procedures of the APA that control the promulgation of rules. *Metromedia v. Director, Div. of Taxation,* 97 *N.J.* 313 (1984).

We have considered the question of when a determination of the Division of Taxation imposing a tax assessment can appropriately be found to implicate agency rule-making, thereby necessitating conformity with the APA. We stated in *Metromedia v. Director, Div. of Taxation,* decided today:

[A]n an agency determination must be considered an administrative rule when all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process. Such a conclusion would be warranted if it appears that the agency determination, in many or most of the following circumstances, (1) is intended to have wide coverage encompassing a

large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.

[96 *N.J.* at 331.]

In this case, applying the *Metromedia* standards, we are satisfied that the Director's assessment was not invalid for want of an authorizing rule or regulation. Here, the taxability of these services is sufficiently clearly and directly inferable from the tax statute itself, especially in the absence of a specific exemption. See discussion, *supra* at 320–323. Further, it has not been demonstrated that the determination represents a material and significant change in administrative policy, even though for several years the taxing authority did not impose the tax. Past policy was itself equivocal, was not officially endorsed, and was not definitively settled. Further, it seems clear that the agency action properly applies retroactively to this particular case and could be applied to similarly situated taxpayers. Finally, the broad fact-finding and informational procedures typical of rule making are not warranted in this case in order to buttress the soundness of the determination or to assure fairness to individual litigants. In terms of the actual assessment, Airwork had every opportunity to challenge with countervailing proofs the application of the tax. Each taxpayer to whom the tax is sought to be imposed will similarly be free to contest the application of the tax to its operations. Accordingly, we conclude that the Director had the authority in this case to proceed by way of adjudication.

## IV

We acknowledge that constitutional issues have been asserted at various stages of this litigation, some by the taxpayer and some by *amicus*. These issues were not determined by the courts below. We note these issues, but in the absence of their consideration by the lower courts, and without a sound and complete record to demonstrate their viability, decline to address them.[1] The taxpayer also argues that the assessment applies only to the cost of labor, not to the cost of parts. This issue, however, was raised for the first time on appeal, and the Appellate Division declined to consider it. We similarly decline to deal with this issue, recognizing that the taxpayer may pursue this as well as its constitutional claims before an appropriate tribunal if it chooses to do so.

In conclusion, we hold that the tax assessment imposed on the taxpayer in this case is in accordance with the terms of the Act; it was permissibly imposed on transactions for the years involved; and it does not in the circumstances presented constitute invalid rule-making.

Accordingly, the judgment below is affirmed.

GARIBALDI, J., dissenting.

It is the part of a good shepherd to shear the flock, not flay it. [Tiberius Caesar, A.D. 25.]

Justice Frankfurter once noted that "[e]ven tax administration does not as a matter of principle preclude considerations of fairness." *Angelus Milling Co. v. Comm'r of Internal Revenue,* 325 *U.S.* 293, 297, 65 *S.Ct.* 1162, 1165, 89 *L.Ed.* 1619, 1623 (1945). Today's decision loses sight of the need for fairness. It

---

[1]The taxpayer asserts that goods sold and delivered to out-of-state customers are immune from taxation under the federal Commerce Clause. It also makes an equal protection argument along these lines, questioning the rationality of such a distinction. *Amicus* American Civil Liberties Union of New Jersey argues that the retroactive imposition of the sales tax violates plaintiff's constitutional right to substantive due process under both federal and State constitutions.

allows the Division of Taxation (Division), long after the transactions in question were closed, to extract from Airwork Service Division (Airwork) sales taxes that the Division itself informed Airwork it should refrain from collecting from its out-of-state customers. The Division has been able to accomplish this apparently draconian result by successfully arguing that Airwork should never have relied on its information in the first place.

Given the prior published position of the Division, Airwork's understandable reliance on that announced position, the nature of the sales tax, and Airwork's current inability to collect the sales taxes, the retroactive imposition of the sales tax produces such a harsh result that it offends fundamental concepts of fairness relating to agency conduct. I believe that an agency may not reverse itself retroactively when doing so will cause extraordinary detriment to those who have relied in good faith on the agency's prior position. Further, as the imposition of sales tax here allows the state to revise its earlier publicized position without first providing a taxpayer with notice of the change, it violates the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –15, governing the promulgation of administrative rules. Hence, I disagree with the majority, and would hold the sales-tax assessment invalid.

I

Administrative agencies need flexibility to exercise their executive role through rulemaking and adjudication so that they may effectuate public policy. *See In re Kallen,* 92 *N.J.* 14, 24–25 (1983). As a result, they have great discretion in selecting the form of proceeding best suited to achieving their aims. *See In re Uniform Admin. Procedure Rules,* 90 *N.J.* 85, 92 (1982); *Texter v. Department of Human Servs.,* 88 *N.J.* 376, 383–84 (1982); *Bally Mfg. Corp. v. New Jersey Casino Control Comm'n,* 85 *N.J.* 325, 338 (1981) (Handler, J., concurring).

This discretion is not unlimited, however. This Court has not hesitated to apply principles of fundamental fairness, beyond those required by the Constitution, to administrative agency actions. *See In re Arndt,* 67 *N.J.* 432 (1975); *Monks v. New Jersey State Parole Bd.,* 58 *N.J.* 238 (1971); *cf. State v. Tropea,* 78 *N.J.* 309, 315–16 (1978) (although retrial of charge of speeding was not barred by Constitution, "considerations of fundamental fairness" militated against retrial when it would merely afford the State another opportunity to produce evidence of the applicable speed limit that the State had failed to produce originally); *Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 294–95 (1971) ("considerations of fairness" dictated that counsel be provided to indigents charged in municipal courts with disorderly persons or other petty offenses). "When specific parties are particularly affected by a proposed rule, fair play and administrative due process dictate that an agency must conscientiously concern itself with and make reasonable efforts to accommodate the rights and interests of the affected individual and genuinely account for the individualized effect of its proposed action." *Bally Mfg. Corp. v. N.J. Casino Control Comm'n, supra,* 85 *N.J.* at 345 (Handler, J., concurring).

"[T]here are no simple answers as to what constitutes fundamental fairness" and "[e]ach case must be considered and evaluated on its own merits." *In re Kallen, supra,* 92 *N.J.* at 27. The determination of whether agencies have observed principles of basic fairness therefore requires "an examination of the facts in each case, giving weight to the effect of the decision on the agency's public policy." *Id.* at 26. My review of this case clearly establishes that the retroactive imposition of the sales tax on Airwork would be harsh and unfair.

Airwork had no reason to believe it was not conforming to the Division's policy. In 1966, after the passage of the New Jersey Sales and Use Tax Act, *L.*1966, *c.* 30, § 1 (Act), the Sales Tax Bureau of the Division issued an "Official News Release" (Release), *New Jersey Tax Rptr. (CCH),* No. 162, (July 11, 1966), stating *inter alia:*

> Charges for repairs where the articles upon which the work is performed are delivered upon completion, pursuant to contract, to a purchaser outside the state for use outside the state are exempt from the sales tax.

The Division never adopted formal regulations governing this specific issue. Thus the Release, continuously printed, was the only statement on the topic for seven years.

In reliance on the Release, Airwork, which is principally engaged in the business of repairing aircraft engines, did not collect sales tax from its out-of-state customers. It did collect sales tax from its New Jersey customers. From Airwork's point of view, a 1967 tax audit confirmed the viability of this position. During its 1967 audit of Airwork, the Division concluded that Airwork's policy of not collecting sales tax from its out-of-state customers was correct. Although neither the Release nor the audit bars the Division from changing its policy, they do raise questions about the fundamental fairness of changing a policy without at least giving a taxpayer notice of that change.

On August 12, 1971, the Division of Tax Appeals promulgated its decision in *Fisher-Stevens Inc. v. Director, Div. of Taxation*, Docket S.T. 109, aff'd, 121 *N.J.Super.* 513 (App.Div. 1972), certif. den., 62 *N.J.* 575 (1973). Two years after the Division of Tax Appeals decision in *Fisher-Stevens*, and only *after* the Appellate Division's decision in *Fisher-Stevens*, the Division first published a document contradicting the Release. In its August-September 1973 edition of *State Tax News*, a bi-monthly newsletter of tax items of interest, the Division announced a complete reversal of its prior position and announced that sales of service performed on goods delivered to customers outside the State were subject to the sales tax. The next issue of *State Tax News*, the October-November 1973 issue, contained the following:

> *Service Performed in New Jersey*—The charges for taxable services performed in New Jersey upon tangible personal property are subject to the sales tax whether the property serviced is delivered within New Jersey or out-of-state * * *.

Although the APA, *N.J.S.A.* 52:14B–1 to –15, was in effect as of September 1, 1969, *see L.*1968, *c.* 410, § 1, none of the rule-making procedures was followed in connection with the Division's publications in the August-September 1973 and October-November 1973 editions of the *State Tax News*. Once alerted by these announcements, Airwork commenced collecting sales tax from its out-of-state customers until the Legislature specifically exempted those customers from the sales tax in 1977. See *L.*1977, *c.* 54.

After publication of these announcements, the Division notified Airwork of its intention to assess sales and use tax for the period from July 1, 1970 to June 30, 1973. Because of the Release, however, the Division later took the position that the assessment period began August 12, 1971, the date of the Division of Tax Appeals' decision in *Fisher-Stevens, Inc. v. Director, Division of Taxation, supra,* Docket S.T. 109. The assessment was for $628,255.31.

## II

The Division cannot seriously maintain that it never changed its interpretation of the Act. The Division's lack of claim for sales tax for the period prior to the decision of the Division of Tax Appeals in *Fisher-Stevens* is itself acknowledgment that a change has occurred, as are its subsequent releases in 1973. Moreover, various statements by the Legislature concerning amendments to the Act recognize that a change in interpretation occurred.

In 1974, the Legislature passed a bill, later vetoed by the Governor for revenue reasons, that would have exempted the transactions at issue from the sales tax. The Assembly Committee on Taxation Statement to this bill provided, in relevant part:

> The committee has acted favorably on Assembly Bill No. 1628 in that it believes the bill serves to remove an inequitable situation, *and further, it is in keeping*

*with the original interpretation of the Sales Tax Act which subsequently was changed.*

*     *     *     *     *     *     *     *

*As noted during the first 6 or 7 years of the life of the act there would have been no sales tax, but several years ago, the interpretation was changed and the tax imposed.* In effect, this bill will return the situation to its original status.

[Emphasis added.]

Those "first 6 or 7 years" were the years from 1966 to 1972 or 1973. Thus, not only did the Legislature perceive a change but, like Airwork, it perceived that change as occurring in 1973.

Similarly, the Assembly Committee on Taxation Statement to A.1787 (1977), a bill which also exempted these transactions from sales tax, stated in relevant part:

The bill proposes to exempt from the sales tax services provided by New Jersey companies on tangible personal property delivered out of state. Because New Jersey is the only State, with the possible exception of New Mexico, that imposes a sales tax on such transactions, it places New Jersey businesses at a considerable disadvantage in maintaining such operations.

*The imposition of the tax is one which did not occur in the beginning years of the sales tax, but was imposed by interpretation later.* Such taxes, when assessed against New Jersey businesses, in many instances incur a loss because they are unable to collect from customers after the fact.

[Emphasis added.]

This bill became law in 1977. *L.*1977, *c.* 54. Since 1977, the services in question have been exempt from the sales tax.

III

The Division relies on the decision of the Division of Tax Appeals in *Fisher-Stevens* as notice of its new revised policy that sales tax is due on sales of services when delivery of the tangible personal property is out-of-state. It is difficult to see how an agency decision that is not on point and was never officially reported can constitute notice of a change in policy.

*Fisher-Stevens* cannot by any stretch of the imagination be said to address the application of sales tax to the services at issue in this case. In *Fisher-Stevens* the court held that services performed and delivered in New Jersey were taxable. There was nothing novel in this approach. From the transcript

of the *Fisher-Stevens* trial, it is evident that the Division's policy was not to tax the services if the finished items rather than being mailed from New Jersey were instead shipped out of the state for mailing by the customer. This policy of course reflects the exemption Airwork claims existed. To contend that Airwork somehow should have read *Fisher-Stevens* and, having digested it, should have determined that the court's language, in which it held that the "use" of direct mail services occurred entirely within this state, actually meant that the rebuilding of nonresidents' aircraft engines for use outside the state was no longer exempt from the state sales tax is beyond belief. Moreover, this expectation is even less realistic when, as here, published, official statements were made by the Division that clearly stated that the sales tax should not be collected for repair charges on articles that were to be delivered and used out of state.

Further, *Fisher-Stevens*, was not even an opinion of a court. The decision of the Division of Tax Appeals was a decision of an administrative agency. Thus, many of the opinions of the Division of Tax Appeals were never published. Those opinions that were published were not published in official reporters such as the present *New Jersey Tax Court Reports*. Unless the Division of Tax Appeals specifically granted a taxpayer's request to receive all copies of its opinions, a taxpayer could not possibly become familiar with all its opinions. Even if a taxpayer made such a request, of course, it is not clear it would be granted.

New Jersey courts have recognized these problems even with respect to reported court opinions. In *Glaser v. Downes*, 120 *N.J.Super.* 476, 491–92 (Ch.Div.1972), rev'd in part, 126 *N.J.Super.* 10 (App.Div.1973), certif. den., 64 *N.J.* 513 (1974), the trial court ruled that the gasoline service-station practice of giving free gifts for merely coming into a station was illegal. The court recognized, however, that it would be unfair to enforce *its* decision without first giving effective notice to service stations

that had been acting in reliance on the Division of Taxation's prior practice of not treating such gifts as illegal and held that:

[T]he Director must give gasoline retailers throughout the State *ample written notice* of the illegality of each of these competitive devices. I leave to his discretion whether he takes this action by the adoption of appropriate regulations or the giving in some fashion of adequate written notice to all of the gasoline retailers operating in this State of the conclusions reached in this opinion. [*Id.* 120 *N.J.Super.* at 492 (emphasis added).]

The Appellate Division in *Glaser v. Downes, supra,* 126 *N.J.Super.* at 18–19, went even further, holding that merely mailing notices to all licensed retail motor fuel dealers was inadequate. If the Director was going to change his prior position and treat the giveaways as illegal, he had to adopt regulations to that effect, and do so in the manner prescribed by the APA, especially policy previously followed by the Division of not treating such giveaways as illegal. *Id.* at 18. After ruling that the Director had to comply with the APA, the court concluded that "[w]hat he did denied due process of law to the three companies * * * involved." *Id.* at 19.

As a practical matter, allowing unreported decisions of administrative agencies to provide sufficient notice of an agency's changed position imposes an intolerable burden on the taxpayer. In addition to regularly checking regulations and Division releases, businessmen would have to meticulously check an agency's decisions, many of which are unreported, for cases that might possibly affect them. Requiring businesses to check for these decisions is a useless waste of time, energy, and money. It would be much simpler, more logical, and more efficient for the Division to simply amend an existing release or promulgate a new regulation when a case causes it to change its policy. This would adequately serve notice to taxpayers of changes in policy and comport with due process.

I recognize that the Division, with the best of intentions, issues releases informally to aid taxpayers in complying with the new tax after the enactment of a new tax statute. Nevertheless, once such a release on a specific topic is set forth, I believe that it is only fair that a change of position similarly be

set forth in a notice. The Division can easily and inexpensively satisfy fairness concerns by merely issuing a new release as it later did in *State Tax News*. Such a release would have provided adequate notice to Airwork to collect sales tax from its out-of-state customers. The cost to the state of such a notice would have been minimal. Thus, to the extent that administrative costs or effects on the efficient operation of government may be legitimate concerns in assessing what process is due in any case, *see Mathews v. Eldridge*, 424 *U.S.* 319, 335, 96 *S.Ct.* 893, 903, 47 *L.Ed.*2d 18, 33 (1976), such concern is easily satisfied here.

I would hold, therefore, that Airwork first received sufficient notice of the Division's change of policy in 1973 when the change was announced in issues of *State Tax News*.

### IV

If Airwork did not receive sufficient notice of change in policy until 1973, then the Division's assessment of sales tax prior to that date is retroactive. This Court has recognized that constitutional due process imposes certain limits on the retroactive application of taxing statutes. *See Klebanow v. Glaser*, 80 *N.J.* 367 (1979). As stated by the Supreme Court in *Welch v. Henry*, 305 *U.S.* 134, 147, 59 *S.Ct.* 121, 125, 83 *L.Ed.* 87, 93 (1938), and quoted with approval by this Court in *Klebanow, supra*, 80 *N.J.* at 376:

> In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation.

Or, stated another way:

> The need of the government for revenue has hitherto been deemed a sufficient justification for making a tax measure retroactive whenever the imposition seemed consonant with justice and the conditions were not such as would ordinarily involve hardship. [*Id.* at 375 (quoting with approval *Untermyer v. Anderson*, 276 *U.S.* 440, 450, 48 *S.Ct.* 353, 356, 72 *L.Ed.* 645, 649 (1928)) (Brandeis, J., dissenting).]

The hardship that exacerbates the unfairness of retroactive application of the agency rule here is that the reversal of the

rule has transformed a statutory agent for the collection of tax into a delinquent taxpayer. *Cf. Central Ill. Pub. Serv. Co. v. United States*, 435 *U.S.* 21, 33 n. 12, 98 *S.Ct.* 917, 923 n. 12, 55 *L.Ed.*2d 82, 91 n. 12 (1978) (expressing concern that retroactive assessment of tax on an employer who had failed in good faith to withhold taxes for employee wages in the form of lunch reimbursement would be "almost punitive in light of the facts"). Although personally liable for the taxes required to be collected under the Sales and Use Tax, *N.J.S.A.* 54:32B–14, Airwork's role in the statutory scheme is as *tax collector* on behalf of the State of New Jersey. *See N.J.S.A.* 54:32B–12. It was in this capacity that Airwork, and others similarly situated, were advised by the Division not to collect the sales tax on services performed for out-of-state customers. The effect of retroactive application is to allow the consumer to escape the tax, while imposing it instead on the vendor. As such, retroactive application changes the very nature of the tax from a sales tax to be paid by the customer to a business tax to be paid by the vendor for the privilege of selling retail goods and services. The vendor can no longer collect the tax from the customer after the transaction has been completed, yet retroactive application *first* imposes the tax *after* the transaction has occurred.

The hardship is particularly worthy of note when the taxpayer could have been expected to refrain from the conduct that created his tax liability had he anticipated the tax. *See Welch v. Henry, supra,* 305 *U.S.* at 147, 59 *S.Ct.* at 125, 83 *L.Ed.* at 93; *Pressed Steel Car Co. v. Lyons,* 7 *Ill.*2d 95, 105–06, 129 *N.E.*2d 765, 770–71 (1955); *Hercules Powder Co. v. State Bd. of Equalization,* 66 *Wyo.* 268, 306, 208 *P.*2d 1096, 1112, reh'g denied, 66 *Wyo.* 309, 210 *P.*2d 824 (1948); *cf. In re Kaplan,* 178 *N.J.Super.* 487, 496 (App.Div.1981) (notions of fundamental fairness impaired in action to retroactively enforce Medicaid anti-fraud provision in part because had appellant been able to anticipate the statute "it seems likely that appellant would have altered his conduct"). Here the conduct that created Airwork's

liability was its failure to collect and pay to the state the sales tax. That conduct surely would have been avoided by Airwork had it known or anticipated that its repairs on out-of-state property would be taxed. Simply stated, had Airwork known that the state would treat such repairs as taxable, it would have collected the tax from its out-of-state customers. Indeed, once Airwork received notice in 1973 that the state would treat these repairs as taxable, it immediately began collecting the tax from its out-of-state customers.

## V

Today in *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313 (1984), we held that the Division's decision to apply the audience share factor in allocating taxpayer's receipts to New Jersey was tantamount to an agency rule and consequently had to be promulgated in accordance with the APA. In that opinion, we stated:

> Similarly, an agency determination can be regarded as a "rule" when it effects a material change in existing law. *See Crema [v. New Jersey Dept. of Environmental Protection], supra,* 94 *N.J.* [286] at 302; K.C. Davis, *Administrative Law Treatise* § 7:25 at 186 (2d ed. Supp.1982); *Ford Motor Co. v. Fed. Trade Comm'n,* 673 F.2d 1008, 1009 (9th Cir.1981), *cert.* den., [459] *U.S.* [999, 103 *S.Ct.* 358], 74 *L.Ed.*2d 394 (1982) (an agency determination that changes existing law and has widespread application must be addressed by rule-making and not adjudication). This feature relates not only to fairness to the individual party actually before the agency but to other persons as well. When an agency's determination alters the *status quo,* persons who are intended to be reached by the finding, and those who will be affected by its future application, should have the opportunity to be heard and to participate in the formulation of the ultimate determination. *See Bergen County Pines Hosp. [v. Dept. of Human Services], supra,* [96] *N.J.* [456]; *Crema, supra,* 94 *N.J.* at 303; *Boller Beverages, Inc. [v. Davis], supra,* 38 *N.J.* [138] at 151. [*Id.* at 330.]

We further held that one of the factors determining whether an agency determination must be considered an administrative rule is whether it "reflects an administrative policy that * * * constitutes a material and significant change from a clear, past agency position on the identical subject matter." *Id.* at 331.

I disagree with the majority and believe that based on the totality of circumstances in this case, it is clear that the policy

announced in 1973 in the *State Tax News* constituted a material and significant change from the prior policy of the Division as stated in its Release. This conclusion is confirmed by the Division's audit of Airwork, is reflected in its failure to assess taxes for the entire period, and is affirmed by the Legislature's statements.

Both the Tax Court and the majority assume that Airwork is contesting the right of the Division initially to make such a ruling under its assessment power. I am not. I am however, claiming that once such a ruling is made, it may not be changed without notice to the affected public. Particularly in a case like this that transforms Airwork from the role of tax collector to that of primary taxpayer, lack of notice produces an extraordinarily harsh and unfair result.

Accordingly, I would hold under the APA that Airwork was entitled to notice of the Division's changed position set forth in its 1973 Release. Since the Division failed to give notice, it violated the procedures under the APA and I would hold its assessment invalid.

*For affirmance* —Chief Justice WILENTZ and Justices SCHREIBER, HANDLER and O'HERN—4.

*For reversal* —Justices CLIFFORD, POLLOCK and GARIBALDI—3.