ment without parole was an improper application of the Three–Strikes Law.

748 A.2d 630

LORETTA COLANTONI, PETITIONER–RESPONDENT, v. BOARD OF EDUCATION OF THE TOWNSHIP OF LONG HILL, MORRIS COUNTY, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 22, 2000—Decided April 10, 2000.

Before Judges BAIME, BROCHIN and WECKER.

*Richard S. Kohn* argued the cause for appellant Long Hill Township Board of Education (*Riker, Danzig, Scherer, Hyland & Perretti*, attorneys; *James S. Rothschild, Jr.*, of counsel; *Mr. Kohn*, on the brief).

*Terri A. Cutrera*, Deputy Attorney General, argued the cause for respondent New Jersey State Board of Education (*John J. Farmer*, Attorney General, attorney; *Mary C. Jacobson*, Assistant Attorney General, of counsel; *Ms. Cutrera*, on the brief).

*Louis P. Bucceri* argued the cause for respondent Loretta Colantoni (*Bucceri & Pincus*, attorneys; *Mr. Bucceri*, of counsel; *Linda Ganz Ott*, on the brief).

Morris–Union Jointure Commission Board of Education submitted an amicus curiae brief (*Martin R. Pachman*, attorney; *Robin T. McMahon*, on the brief).

The opinion of the court was delivered by

BAIME, P.J.A.D.

█ Our statutes authorize two or more boards of education to establish a jointure commission for the purpose of educating handicapped pupils. *N.J.S.A.* 18A:46–25 to –28. The novel question presented by this appeal is whether a jointure commission may contract with a participating board of education to provide guidance services to non-handicapped students. We find no statutory authority for the exercise of such a power.

## I.

The facts are not in dispute and are essentially a matter of public record. Loretta Colantoni was a tenured teacher and guidance counselor employed by the Long Hill Board of Education. From 1990 to 1993, Colantoni was assigned as a guidance counselor for grades five through eight. In 1994, the Long Hill Board eliminated the position of guidance counselor for budgetary reasons. Colantoni was reassigned as a full-time classroom teacher.

In 1995, the Long Hill Board decided that part-time guidance services were necessary. The Board contracted with the Morris–Union Jointure Commission Board of Education (Commission) to obtain guidance services for sixteen hours a week to both handicapped and non-handicapped students. We digress to note that the Long Hill Board asserts in its brief the guidance services rendered by the Commission were predominantly for the benefit of special needs students. The record does not support that conclusory allegation which is, in any event, irrelevant because the legal question presented is whether the Commission was empowered to provide services to non-handicapped students. We will return to this issue later in our opinion.

Colantoni filed a petition with the Commissioner of Education. She alleged that the Long Hill Board violated her tenure and seniority rights when it eliminated her position as guidance counselor and contracted with the Commission for the provision of guidance services.[1] The matter was referred to the Office of Administrative Law as a contested case. On October 18, 1996, an administrative law judge found that Colantoni was not entitled to any relief. The ALJ determined that a board of education could eliminate the position of guidance counselor and enter into a contract for the provision of guidance services. However, she further concluded that a jointure commission's statutory authority was limited to providing educational services to handicapped pupils. To the extent to which the contract between the Long Hill Board and the Commission required the provision of guidance services to non-handicapped students, the agreement was found to be illegal.

The Commissioner adopted the ALJ's finding that the Long Hill Board did not violate Colantoni's seniority and tenure rights when it eliminated her position and "contracted out" for guidance services. The Commissioner disagreed, however, with the ALJ's conclusion that the Commission lacked the authority to provide educational services to non-handicapped students. According to the Commissioner, "[w]hile the primary purpose of a jointure commission is to assist boards of education in carrying out their common duties with respect to the education and training of handicapped pupils, nothing in the statute ... preclude[s][it] from expanding the scope of its services to include non-handicapped [students]."

---

[1] On April 8, 1996, the Long Hill Education Association filed an unfair practice charge against the Long Hill Board with the Public Employment Relations Commission (PERC). The Association argued that the Long Hill Board had violated Colantoni's seniority and tenure rights by eliminating her position and entering a contract for guidance services. Based upon this claim, PERC filed a complaint. PERC has deferred action on the unfair practice charged pending the outcome of this appeal.

Colantoni appealed to the State Board of Education. On March 3, 1999, the State Board reinstated the ALJ's determination that the contract between the Long Hill Board and the Commission was unlawful to the extent that it required the Commission to provide educational services to non-handicapped pupils.[2] In reaching this conclusion, the State Board stressed that the legislatively articulated purpose for creating a jointure commission was to provide for the education and training of handicapped students. On March 23, 1999, the Commission filed a motion with the State Board, seeking to intervene and requesting reconsideration. While that motion was pending, the Long Hill Board filed a notice of appeal with this court effectively divesting the State Board of jurisdiction. However, on May 7, 1999, the State Board denied the Commission's motion.[3] In its written decision, the State Board directed the Commissioner of Education to determine what activities of the Commission "involved the provision of services to non-handicapped students." We subsequently granted the Commission's motion to appear in the role of *amicus curiae*. We now consider the issue presented.

## II.

We view the question before us as solely one of statutory interpretation. More specifically, we have no occasion to determine which of the services provided by the Commission benefit handicapped pupils and which benefit non-handicapped pupils. This is an issue within the State Board's domain. The State Board has ordered the Commissioner to investigate that subject. We have no occasion to delve into that question here.

---

[2] Colantoni retired immediately after filing her appeal with the State Board. The Long Hill Board thus moved to dismiss the appeal as moot. The State Board denied the motion to dismiss because of the public importance of the issue presented.

[3] The Commission filed an appeal with this court from the denial of its motion to intervene. We affirmed the State Board's decision in an unreported opinion.

 At issue is whether a jointure commission is authorized to provide educational services to non-handicapped students. In resolving that question, we give substantial deference to the interpretation of the agency charged with enforcement of the statute—the State Board. The State Board's construction of the statute "will prevail provided it is not plainly unreasonable." *Merin v. Maglaki,* 126 *N.J.* 430, 437, 599 *A.*2d 1256 (1992); *see also Turnpike Authority v. AFSCME Council 73,* 150 *N.J.* 331, 351, 696 *A.*2d 585 (1997). Although the Legislature's clearly expressed legislative intent "cannot be trumped by countervailing administrative practices," *Airwork Serv. Div. v. Director, Div. Taxation,* 97 *N.J.* 290, 296, 478 *A.*2d 729 (1984), *cert. denied,* 471 *U.S.* 1127, 105 *S.Ct.* 2662, 86 *L.Ed.*2d 278 (1985), and agencies do not necessarily have "superior ability to resolve purely legal questions," *Greenwood v. State Police Training Center,* 127 *N.J.* 500, 513, 606 *A.*2d 336 (1992), we recognize that we have no monopoly on justice and are thus obliged to give weight to the manner in which an executive department has applied a statute. *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 560–63, 362 *A.*2d 13 (1976).

In this case, the State Board's interpretation is manifestly supported by the statutory language. *N.J.S.A.* 18A:46–25 provides: ·

When two or more boards of education determine to carry out jointly by agreement the duties imposed upon them *in regard to the education and training of handicapped pupils* the said boards may, in accordance with rules and regulations of the state board, and with approval of the Commissioner by the adoption of similar resolutions establish a jointure commission *for the purpose of providing such services....*

The italicized phrases plainly define the scope of the powers conferred upon a jointure commission. The statutory language is crystal clear. The "purpose" of a jointure commission is to provide "education[al]" and "training" services to handicapped pupils.

The Legislature's description of the powers of a jointure commission makes specific reference to this articulated objective. *N.J.S.A.* 18A:46–26 provides:

The commission may, in accordance with rules of the state board:

a. Provide and maintain the necessary facilities by acquiring land, building, enlarging, repairing, furnishing, leasing or renting;

b. Take such action as may be necessary for the lawful and proper conduct of the educational program *for such children as are referred to the commission* by boards of education which are members of the commission;

c. Employ necessary principals, teachers and other officers and employees, who shall have the same rights and privileges as those who are similarly employed by local boards of education;

d. Accept pupils from other school districts and fix the tuition rates therefor;

e. Apportion among the contracting districts the amounts of the capital and current operating costs of the program so undertaken.

*Within the limited responsibilities of this chapter* and except as otherwise provided, the commission shall have and may exercise all the powers of a board of education in carrying out the purpose of this chapter.

The phrase "for such children" clearly pertains to handicapped students who are referred to a jointure commission by a member board of education. So too, the phrase "[w]ithin the limited responsibilities of this chapter" plainly refers to the raison d'être for the establishment of a jointure commission. The words "this chapter" plainly refer to Chapter 46 which is comprised of sections relating to the educational needs of handicapped pupils.

We regard the statutory language as fully dispositive of this issue. But even were we to find some ambiguity in the legislative language, extrinsic evidence would support the conclusion we have reached. The preamble to *L.* 1962, *c.* 232 reads as follows:

An Act to facilitate the education facilities for physically handicapped and mentally retarded children by 2 or more boards of education by the establishment of jointure commissions.

[Laws of 1962, Chapter 232 at 1129].

Further, the statement of the bill's sponsors explains:

This bill would afford a method whereby 2 or more boards of education may provide the required educational facilities and program for physically handicapped and mentally retarded children.

Thus, the Legislature made its intent explicit—the purpose of a jointure commission is to provide educational facilities and programs for handicapped children.

We reject the Long Hill Board's argument that although the primary mission of a jointure commission is to assist member

districts in educating special needs children, a secondary purpose is to provide flexibility to local boards of education and to promote efficient fiscal operations of public educational institutions. We find nothing in the statutory language or legislative history to support this contention. The available evidence abounds the other way. We cannot act as a superlegislature and supply an ingredient that is missing from the statutory scheme. Perhaps the Legislature did not want to dilute the responsibility of a jointure commission to provide educational service to handicapped students. But in any event, assessing the wisdom of the legislation is beyond our judicial power.

We add that the Legislature has created other avenues to provide pooled services, facilities and programs that do not distinguish between handicapped and non-handicapped pupils. One avenue is through county educational services commissions. *N.J.S.A.* 18A:46–14. Such commissions may be established by local boards of education with the concurrence of the Commissioner of Education on the approval of the State Board. *N.J.S.A.* 18A:6–52. These commissions are empowered to provide a broad range of educational and administrative services to both handicapped and non-handicapped students. *Impey v. Board of Educ. of Borough of Shrewsbury,* 142 *N.J.* 388, 662 *A.*2d 960 (1995). In contrast, the powers conferred upon a jointure commission established under *N.J.S.A.* 18A:46–25 are more narrowly circumscribed, and may be exercised only with respect to special needs pupils.

Affirmed.